253 N.J. Super. 98 (1991)
601 A.2d 223
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MARIO POSTORINO AND DAVID ANAGNOS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1991.
Decided December 10, 1991.
*99 Before Judges O'BRIEN, HAVEY and CONLEY.
Catherine Foddai, Deputy Attorney General, argued the cause for appellant (Robert J. Del Tufo, Attorney General, *100 Richard T. Carley, Assistant Attorney General, of counsel and on the letter brief).
Jean deSales Barrett argued the cause for respondent David Anagnos (Ruhnke & Barrett, attorneys, David A. Ruhnke, on the joint letter brief).
Michael Critchley argued the cause for respondent Mario Postorino (Michael Critchley, on the joint letter brief).
Alan L. Zegas, submitted a brief on behalf of amicus curiae Association of Criminal Defense Lawyers of New Jersey (Alan L. Zegas on the letter brief).
The opinion of the court was delivered by CONLEY, J.S.C. (temporarily assigned).
In this interlocutory appeal the State challenges an order permitting defendants to ask a principal State witness on cross-examination his current name and address. Although the State objected on the basis of prior threats of harm to the witness attributed to defendants some three years earlier, the trial court concluded the defendants' sixth amendment right to confrontation outweighed the State's need to protect its witness. We modify and remand for further consideration.
Defendants have been indicted for numerous offenses including loan sharking and gambling. The criminal activity is alleged to have occurred between May 1986 and June 1988. One of the State's primary witnesses is an individual whose real name is Charles Breitweiser. Following an arrest for sale of cocaine, Mr. Breitweiser agreed to cooperate with the State during its investigation of defendants in 1987 and did so over a 10-month time period. During this time, Mr. Breitweiser wore a "body mike" and recorded several conversations with defendants arising from an alleged usurious loan of $2,500 defendants made to Mr. Breitweiser and their alleged attempts to extort repayment through threats of harm.
*101 We have not been supplied with copies of transcripts of the conversations and the record does not reflect the language of the actual threats. We are aware the trial judge heard the threats at the time he listened to all the tapes during a Driver[1] hearing. And, although we do not have a verbatim version, the threats were thus characterized by the prosecutor during arguments before the trial court on defendants' application for disclosure:
I mean, I wouldn't say that the threats which are on the tapes themselves are overwhelming  I mean, they're not threats which would jump out at you, but they are threats....
........
... you'll hear Mr. Driscoll[2] and Mr. Anagnos saying we'll go to Connecticut, we'll look for you in Connecticut. That's what they're saying to him on the tape. Now that is a threat because he isn't paying him their money....
........
Mr. Anagnos was present with Mr. Driscoll when they told him  Mr. Anagnos says to him I'm holding him back right now and Driscoll says I'm not going to let him hold me back, I'm going to find you....
........
I don't have a tape by Mr. Postorino threatening him, but the clear impact is Mr. Postorino's the one in charge of this....
While Mr. Breitweiser expressed concern over his safety and his family's safety if he testified for the State, he declined protection pursuant to the federal Witness Protection Program, 18 U.S.C. §§ 3521-3528. However, he requested and was given a new name and address, in addition to a new car and $2,500. For the last three years he has lived under his new name at the new location. His family has remained at their prior address. There is nothing in the record to support any determination that his family has in any way been threatened or harmed over the *102 last three years[3]. Aside from the State's representation that Mr. Breitweiser has no further arrest or conviction record under his new name, nothing is known about him during the last 3 years.
Shortly prior to trial, defendants made a Brady[4] request upon the prosecutor for, among other information, Mr. Breitweiser's current address. This request was refused based on the mistaken assumption Mr. Breitweiser was in the federal Witness Protection Program and because of the threats. However, a "rap sheet" in addition to a written but unsigned agreement concerning Breitweiser's cooperation and benefits in return, were disclosed. Additionally, the State provided a representation by the prosecutor that there was no rap sheet under Mr. Breitweiser's new name.
Preliminarily, we note defendants' request for the current name and address of Mr. Breitweiser was initiated during pretrial discovery, albeit shortly before trial. In this respect, it has been cautioned that the sixth amendment right to confront witnesses is a trial right, and "does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." Pennsylvania v. Ritchie, 480 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40, 54 (1987); State v. Cusick, 219 N.J. Super. 452, 462, 530 A.2d 806 (App.Div.), certif. denied 109 N.J. 54, 532 A.2d 1118 (1987). Thus, defendants characterized their initial pretrial request as a Brady fourteenth amendment request.[5]
*103 R. 3:13-3(a)(7), subject to an appropriate protective order pursuant to R. 3:13-3(d), however, does require pretrial disclosure of the name and address of witnesses. Moreover, the sixth amendment confrontation clause can encompass cross-examination to elicit such information during trial testimony of a witness. Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968).
In Smith, the primary witness against defendant charged with drug offenses admitted during his testimony that the name he used was not his real name. Defendant then asked what his real name was. The prosecutor objected. The objection was sustained. In reversing defendant's conviction on that basis, the Supreme Court of the United States said:
In the present case there was not, to be sure, a complete denial of all right of cross-examination. But the petitioner was denied the right to ask the principal prosecution witness either his name or where he lived, although the witness admitted that the name he had first given was false. Yet when the credibility of a witness is at issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiring at the threshold is effectively to emasculate the right of cross-examination itself. [390 U.S. at 131, 88 S.Ct. at 750, 19 L.Ed.2d at 959].
Further, quoting Alford v. United States, 282 U.S. 687, 688-689, 51 S.Ct. 218, 219-20, 75 L.Ed. 624, 626 (1931), the court observed:
It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place a witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.... To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.... The question *104 "where do you live?" was not only an appropriate preliminary to the cross-examination of the witness, but on its face, without any such declaration of purpose as was made by counsel here, was an essential step in identifying the witness with his environment, to which cross-examination may always be directed.... [390 U.S. at 132, 88 S.Ct. at 750, 19 L.Ed.2d at 959].
The constitutional right of confrontation, however, is not unlimited. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). See for example Delaware v. Fensterer, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (admission of expert opinion in murder trial that victim's hairs found on cat leash, alleged to be the murder weapon, had been forcibly removed from her head when strangled did not deny defendant's confrontation rights even though expert could not recall the basis for the opinion); State v. Crandall, 120 N.J. 649, 577 A.2d 483 (1990) (right of confrontation not violated by statute permitting sexual assault child victim to testify by closed circuit television); State v. Boiardo, 83 N.J. 350, 416 A.2d 793 (1980) (nondisclosure of letters sent to a reporter by state's informant/witness, which could bear upon credibility, not violate defendant's sixth amendment rights in a conspiracy trial where the information could be obtained through less intrusive means); State v. Varona, 242 N.J. Super. 474, 577 A.2d 524 (App.Div.), certif. denied 122 N.J. 386, 585 A.2d 389 (1990) (nondisclosure of identity and address, and inability to confront during drug trial an informant, did not deny confrontation rights where informant's role was not substantial and defendant was able to fully cross-examine undercover investigator); State v. Williams, 239 N.J. Super. 620, 571 A.2d 1358 (App.Div. 1990) (right of confrontation not violated when, following in-camera proceeding, counsel was precluded from questioning police officer in a drug trial about the precise location of his surveillance site); State v. Cusick, 219 N.J. Super. at 452, 530 A.2d 806 (defendant's right to confront sexual assault child victim was not violated by nondisclosure, following in-camera review, of certain records of D.Y.F.S. and Authur Brisbane Child Treatment Center).
*105 Specific limitations upon disclosure of the name and address of witnesses have, under certain circumstances, been upheld, notwithstanding Smith v. Illinois. State v. Florez, 248 N.J. Super. 54, 589 A.2d 1382 (Law Div. 1991) (substantial concern over safety of prosecutor's paid, professional informant who set up defendant's drug buy justified refusal to disclose informant's real name and address where other information was known about him and deemed sufficient to permit full cross-examination). See also Clark v. Ricketts, 886 F.2d 1152 (9th Cir.1989) (right of confrontation did not require government's "John Doe" to testify as to current address where his real identity and arrest record was disclosed, where that information was enough to give defendant the "avenues of in-court examination and out-of-court investigation" denied in Smith v. Illinois, where "John Doe" did give a general area of residence during trial testimony, and where in-camera proceeding revealed "John Doe" was a Drug Enforcement Agency informant against whose life threats had been made and who was expected to provided testimony in other pending cases); U.S. v. Spector, 793 F.2d 932 (8th Cir.1986) cert. denied 479 U.S. 1031, 107 S.Ct. 876, 93 L.Ed.2d 830 (1987) (right to confrontation did not require informant to testify as to his address where cross-examination revealed his current address and where "a review of the wide-ranging cross-examination of [the informant] disclosed an extensive knowledge of his background" such as to give defendant an "ample opportunity to identify this witness with his environment," 793 F.2d at 938). Accord U.S. v. Chavez-Vernaza, 844 F.2d 1368, 1376-77 (9th Cir.1988); U.S. v. Mesa, 660 F.2d 1070, 1075 (5th Cir.1981).
In seeking a reversal here, the State relies on State v. Florez, 248 N.J. Super. 54, 589 A.2d 1382. Drug charges against defendant in that case arose from a "reverse sting" operation in which police posed as sellers of cocaine in an effort to arrest mid-level cocaine dealers. A confidential informant agreed to arrange a meeting between the "sellers" and the buyers, one of whom was defendant. The State's motion to *106 permit the informant to testify at trial with a hood over his head to protect himself and his family was denied as a violation of defendant's right to confrontation. Defendant then moved to obtain the true name and address of the informant. Considering the issue within the context of informant privilege, see State v. Milligan, 71 N.J. 373, 383-84, 365 A.2d 914 (1976)[6], and noting the existence of threats by a major drug organization arising from the informant's extensive and longstanding activities for the prosecutor's office, the trial court said: "we must be careful not to seriously impair an important law enforcement investigative technique when disclosure would render its future use valueless and expose a confidential informant to reprisal and death." 248 N.J. Super. at 62, 589 A.2d 1382. Weighing this danger against the need for disclosure, the court found:
The suggestion that defendants need the true name and address of CI to enable defendants' investigators to inquire into his background is without merit. This information is neither relevant nor admissible. His credibility can be impeached only by evidence of his prior conviction of crime (there are none) or, as exists here, by showing that he has a pending criminal charge and his *107 testimony could be tainted by his hope or expectation of a favorable recommendation from this prosecutor. Defendants already have this information. One does not have to be a "rocket scientist" to appreciate that knowledge of CI's true name and address will be of only "peripheral assistance" to defendants and is more apt to frighten and terrorize CI and his family into believing that their lives will be in jeopardy if CI continues to cooperate with the State. [248 N.J. Super. at 63 [589 A.2d 1382].
We do not necessarily agree with all that was said by the trial court in Florez. In particular, we disagree that the real name and address of a state's witness is not relevant or admissible and that credibility can be impeached only by prior convictions or pending charges. See Evid.R. 20, 22 and 47 and comments thereunder. We agree with the observations of the United States Supreme Court in Smith v. Illinois as to the various ways a witness' name and address can impact upon credibility issues. However, we do not suggest any disagreement with the result in Florez in light of the nature of the threats and impact upon the continuing cooperation with law enforcement officials by a paid, professional informer disclosure presented in that case.
Here, we are not dealing with an issue of informant privilege. While Mr. Breitweiser cooperated with the prosecutor in this particular investigation, it does not appear that he is a paid, professional confidential informant with a continuing law enforcement relationship and his real identity has been disclosed. Moreover, the nature of the alleged threats here, as far as we can discern them to be, is significantly less substantial than in Florez. Indeed, in this respect we note that the threats were limited in time and occurred almost three years ago.
On the other hand, as the State points out, defendants already possess material that can be used to impeach Mr. Breitweiser during cross-examination. They know, for instance, that he is an accused drug dealer, and they are aware of his prior criminal record. They also know that he was paid and provided a car in return for his cooperation and they are aware of the terms of his plea bargain with the State. Further, since *108 defendants are aware of Mr. Breitweiser's actual name and prior residence, they also have sufficient information to investigate his prior background. But nothing is known about him for at least three years except the State's representation that he has no further criminal record. We consider this to be a substantial time period during which his entire life style and environment may have been such as to impact significantly upon his credibility as a witness during defendants' trial.
We think substantial deference should be given the trial judge in the context presented here. It was he who heard the actual alleged threats during the Driver hearing and thus was in the best position to assess the weight thereof. It is also the trial judge who is in the best position to weigh the impact disclosure or nondisclosure may have upon defendants' ability to effectively cross-examine Mr. Breitweiser. Under these circumstances we are reluctant to conclude an abuse of discretion occurred here. We do not sense that the trial court's weighing of the State's interests in protecting Mr. Breitweiser and defendants' right to confront that witness went wide of the mark.
However, recognizing that what is involved is a delicate balancing test, we think the interests of the State and defendants can both be accommodated short of ordering disclosure of Mr. Breitweiser's current name and address in open court. We think the trial court should, upon Mr. Breitweiser's appearance, conduct an in-camera Rule 8 proceeding to ascertain what testimony Mr. Breitweiser might offer as to his current background, short of his actual name and address. At the Rule 8 proceeding, the State, through its own investigation, should provide the trial court with background information relating to Mr. Breitweiser over the last three years. We then would leave it to the sound discretion of the trial court to determine whether defendants still required the witness' current name and address or whether the additional information disclosed during the Rule 8 in-camera proceeding would provide defendants, along with the other information they already have, with sufficient opportunity for effective cross-examination. In this respect, we *109 caution that the right of confrontation only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. at 20, 106 S.Ct. at 292, 88 L.Ed.2d at 15.
In the event the trial court determines Mr. Breitweiser's name and current address should still be provided, such disclosure should be limited to defense counsel and their investigators pursuant to a protective order designed to prevent disclosure to defendants either directly or indirectly. In this way, the interests of the State and defendants can both best be accommodated.
We thus modify the order below and remand for further consideration consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] State v. Driver, 38 N.J. 255, 183 A.2d 655 (1962).
[2] Patrick Driscoll is a co-defendant.
[3] We reject the State's suggestion that defense counsel's service of a subpoena in connection with this matter upon Mr. Breitweiser's family can be considered threatening conduct.
[4] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[5] Brady v. Maryland requires the prosecution to disclose evidence in its possession that is both favorable to defendant and material. Under a due process Brady analysis, evidence is material "only if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985).
[6] The informant privilege permits, with few exceptions, the government to withhold disclosure of an informant's identity. Grounded in common law, and codified by statute (N.J.S.A. 2A:84A-28), it is designed to recognize the indispensable role of informants in effective enforcement of the law. State v. Milligan, 71 N.J. at 381, 365 A.2d 914. It is, however, subject to competing interests of defendants faced with criminal charges and, upon a balancing of those interests against the State's interest in protecting the flow of information, may be required to give way. For example:

"where the disclosure of the contents of a communication does not reveal the identity of the informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable. Nor will it apply where disclosure is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.... Furthermore, the privilege is inapplicable where the informer is an essential witness on a basic issue in the case ... where the informer is an active participant in the crime for which defendant is prosecuted ... where a defense of entrapment seems reasonably plausible ... or where disclosure is mandated by fundamental principles of fairness to the accused...." [Id. at 383-84, 365 A.2d 914. Citations omitted].