261 N.J. Super. 12 (1992)
617 A.2d 670
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALEX FLOREZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 30, 1992.
Decided December 8, 1992.
*15 Before Judges COLEMAN, SHEBELL and STEIN.
Zulima V. Farber, Public Defender, attorney for appellant (Jon Steiger, Designated Counsel, on the brief).
Robert J. Del Tufo, Attorney General of New Jersey, attorney for respondent (Craig V. Zwillman, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
The significant issue raised in this appeal is whether the true identity of an informant who negotiated and consummated a sale of drugs should be disclosed in the trial on the issue of guilt where the informer is the State's primary witness. Following a jury trial, defendant was found guilty of second-degree *16 conspiracy with Harold Garcia[1] to possess cocaine with intent to distribute, contrary to N.J.S.A. 2C:35-5a(1), b(1) and N.J.S.A. 2C:5-2. Defendant was sentenced to a custodial term of eight years, and he was fined $1,500. In this appeal, the following issues have been raised:
I THE USE OF A SPECIAL INTERROGATORY ON THE JURY VERDICT FORM VIOLATED ESTABLISHED STANDARDS APPLICABLE TO THE ADMINISTRATION OF CRIMINAL JUSTICE AND DEPRIVED DEFENDANT OF A FAIR TRIAL.
II THE COURT'S MISINSTRUCTION TO THE JURY ABOUT THE NECESSITY FOR INTENT TO DISTRIBUTE AS AN ELEMENT OF THE SUBSTANTIVE OFFENSE UNDERLYING THE CONSPIRACY CHARGE HAD THE CAPACITY TO CONFUSE THE JURY AND WAS PLAIN ERROR (PLAIN ERROR; R. 2:6-2(a)(1)).
III NUMEROUS IMPROPER AND INFLAMMATORY STATEMENTS INCLUDED IN THE PROSECUTOR'S SUMMATION HAD THE CAPACITY TO INFLAME THE JURY AND AMOUNTED TO PROSECUTORIAL MISCONDUCT TO A DEGREE SUFFICIENT TO WARRANT A REVERSAL OF THE DEFENDANT'S CONVICTION. (PLAIN ERROR; R. 2:6-2(a)(1)).
IV THE COURT'S ERRONEOUS INSTRUCTION TO THE JURY AS TO THE AFFIRMATIVE DEFENSE OF ENTRAPMENT HAD THE CAPACITY TO CONFUSE THE JURY AND BRING ABOUT AN UNJUST RESULT.
V IT WAS SERIOUS ABUSE OF JUDICIAL DISCRETION TO DENY THE NUMEROUS DISCOVERY REQUESTS OF DEFENDANTS.

I
This case involves a "reverse sting" drug operation conducted by the Somerset County Prosecutor. The prosecutor retained the services of a "so-called informer" to set up drug deals and to sell cocaine at less than market rates. The "so-called informer" was a cocaine broker hired by the prosecutor, and he was paid a percentage of the cash received. The trial judge described Capola as a paid, professional confidential informer, State v. Florez, 248 N.J. Super. 54, 61, 589 A.2d 1382 (Law Div. 1991), who "was, in effect, a State's agent."
*17 The purpose of the operation was to identify and arrest midlevel cocaine dealers in the New York metropolitan area, who were interested in purchasing large quantities of cocaine at wholesale prices. Many of these dealers were believed to reside outside of Somerset County. The present case involves a transaction that was negotiated in defendant's home county of Union and finalized in Somerset County. The role of regular law enforcement personnel was to act as backup surveillance to arrest the buyers when a sale with the "so-called informer" was consummated. The present case involves a sale of drugs which occurred on January 4, 1990.
About one and one-half years prior to January 1990, the Somerset County Prosecutor's Office hired Nicholas Capola (a pseudonym) as a confidential informer. They instructed him to disseminate information in the New York metropolitan area that he knows a person who will sell large quantities of cocaine at less than the usual wholesale prices. The usual price varied between $18,000 to $22,000 per kilogram of cocaine, but Capola disseminated information that he knew a seller willing to accept only $16,000 per kilogram. Capola was that seller. Capola's responsibility was to arrange a meeting at which the buyers would bring cash to a predetermined location to purchase cocaine. Once the drug deal was closed, the buyers would be arrested.
Capola was rewarded rather well for his services when an arrest was made which resulted in the seizure of cash. He would receive a commission of 10% of all cash seized up to $100,000, and 15% in excess of $100,000. Capola has been enormously successful. As the result of his efforts, 13 indictments have been returned against 27 defendants and cash of $1,300,000 has been seized. Consequently, Capola has earned about $145,000 in commissions.
On January 2, 1990, Orizon De La Roche also became an informer for the Somerset County Prosecutor following his arrest during a drug transaction arranged by Capola. He was *18 not a paid informer; instead he worked as an informant in the hope of receiving a favorable disposition of his criminal case. On January 4, 1990, De La Roche provided Capola with the names of defendant Florez and co-defendant Garcia as potential cocaine buyers. The first meeting between defendant, Garcia, De La Roche and Capola occurred on January 6, 1990 in Elizabeth, New Jersey. This meeting was the outcome of other discussions about the sale and purchase of one kilogram of cocaine for $16,000.
At the meeting, defendant approached a car, which Capola and De la Roche occupied, while Garcia remained about 200 feet away in the defendant's car. Capola and defendant discussed the one kilogram of cocaine. After that conversation, Garcia and Florez drove to a diner in Roselle, New Jersey, where the two of them, Capola and De la Roche had coffee. They agreed that after breakfast, Garcia and Florez would follow Capola and De la Roche to a certain area of the parking lot for the Blue Star Shopping Center in Watchung, Somerset County, New Jersey, to finalize the sale for one kilogram of cocaine for $16,000.
When Capola and De La Roche arrived at the parking lot, Capola got out of his car leaving De La Roche behind. Pursuant to a predetermined plan, a surveillance team of regular law enforcement personnel had parked a decoy automobile (a third car) in the designated parking area at the mall into which they had placed one kilogram of cocaine in the trunk. Capola walked from his car to the decoy car with Florez. Garcia followed in their car and parked next to the decoy car. After Garcia showed Capola the money, they got into the decoy car. The money ($16,000) was given to Capola by Garcia. Capola then obtained the cocaine from the trunk of the decoy car, and it was placed into a gym bag. Garcia took possession of the cocaine, while Florez was standing beside the decoy car. Garcia told Capola that the money bag contained one or two checks which were good. As Garcia and Florez were walking back to their car, the surveillance team of law enforcement officers *19 arrested everyone and seized the cocaine as well as the money. Later, Capola was paid about $1,700 in commissions for this drug deal.

II
First we turn our attention to defendant's contentions that the denial of certain pretrial discovery motions deprived him of a fair trial. The trial court's rulings on some of these motions have been reported in State v. Florez, supra, 248 N.J. Super. 54, 589 A.2d 1382. More specifically, defendant argues that the failure of the trial court to require disclosure of the true identity and address of Capola precluded any effective cross-examination of him, thereby depriving defendant of his Sixth Amendment right to confrontation.
During the pretrial phase, the prosecutor took the position that Capola was the only informer involved in the cocaine sale to defendant. Capola submitted a certification to the court stating that his life would be jeopardized if his identity, address and facial features were disclosed. Based on this certification, the prosecutor made an application to permit Capola to testify with a hood over his head. This motion was denied because the judge regarded that "as a violation of defendant['s] Sixth Amendment right to confront all witnesses against [defendant]." State v. Florez, supra, 248 N.J. Super. at 58, 589 A.2d 1382.
Thereafter, defendant made a motion to compel the prosecutor to disclose the true name and address of Capola to enable defendant to conduct a meaningful investigation of his accuser. The request was made pursuant to Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218 (1963) and the Sixth Amendment confrontation clause. In response, the prosecutor gave defense counsel a redacted copy of Capola's arrest record. That record allegedly revealed that he was arrested in Seattle, Washington, on a charge of selling cocaine which was dismissed. The record also revealed that Capola *20 was arrested on March 30, 1990, by federal authorities in Brooklyn, New York on a charge of theft of government funds. That charge was still pending in March 1991 when the present motion was decided by the trial court. Since the prosecutor had redacted Capola's name and address from the arrest record, defendant was unable to conduct an independent investigation of Capola.
The trial judge declined to require disclosure of the name and address of Capola, finding that disclosure was not necessary. State v. Florez, supra, 248 N.J. Super. at 62, 589 A.2d 1382. The judge concluded that the fear of potential harm to him and/or his family outweighed the necessity for disclosure of Capola's true name and address. Id. at 63, 589 A.2d 1382. The judge concluded further that a redacted copy of Capola's "rap sheet" provided defendant's counsel with enough information with which to impeach Capola's credibility, enabling defense counsel to conduct a proper cross-examination of Capola. Thus, Capola was permitted to testify at trial under that pseudonym, and defendant was prohibited from obtaining his real name and address.
Defendant argues that the judge erred in denying his motion to compel disclosure of Capola's true name and address. Under both the Sixth Amendment to the United States Constitution and the New Jersey Constitution, N.J. Const. art. I, par. 10, a defendant accused of a crime has both the right to a face-to-face confrontation of his or her accusers and the right to conduct a proper cross-examination of the witnesses against him or her. Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); Coy v. Iowa, 487 U.S. 1012, 1017, 108 S.Ct. 2798, 101 L.Ed.2d 857, 864 (1988); Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923, 925 (1965); State v. Crandall, 120 N.J. 649, 577 A.2d 483 (1990); State in the Interest of B.F., 230 N.J. Super. 153, 158, 553 A.2d 40 (App.Div. 1989).
*21 The United States Supreme Court has distinguished between these two rights in the following manner. The Court has expressed the desirability of a "preference" for face-to-face courtroom confrontation; whereas, the Court has recognized the right of cross-examination as a "secured" right. Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597, 606 (1980); State v. Washington, 202 N.J. Super. 187, 191, 494 A.2d 335 (App.Div. 1985). Cases such as Maryland v. Craig, supra, Coy v. Iowa, supra, and State v. Crandall, supra, have acknowledged that in some limited circumstances the "preference" for face-to-face courtroom confrontation may have to give way to the need for obtaining testimony from young victims in child abuse cases. But even in those cases, the "secured" right to cross-examination was not compromised.
This case involves the informer's privilege as defined by Evid.R. 36. That rule provides that the identity of an informer need not be disclosed and evidence respecting the identity of an informer "is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues."
The plain language of Evid.R. 36 evinces a purpose to protect the identity of "a person who has furnished information purporting to disclose a violation of a provision of laws of this State or the United States to a representative of the State or the United States or a governmental division thereof." The United States Supreme Court has held that "[t]he purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.... [B]y preserving their anonymity [the informers], encourages them to perform [a citizen's] obligation" ... "... [and] to communicate their knowledge of the commission of crimes to law-enforcement officials." Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639, 644 (1957).
*22 Roviaro held that where, in an actual trial of a criminal case, "The disclosure of an informer's identity ... is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." 353 U.S. at 60-61, 77 S.Ct. at 628, 1 L.Ed.2d at 645. Even though the informer was not called as a witness by the government in Roviaro, disclosure was required in the trial of the criminal charges because he could assist the accused with his defense of entrapment. Ten years later, the Roviaro rule was reaffirmed in McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), which was a Fourth Amendment case.
Evid.R. 36 is based upon N.J.S.A. 2A:84A-28 which codified case law and reflects the holding in Roviaro. The rule makes clear that the privilege is not absolute. Roviaro v. United States, supra, 353 U.S. at 60, 77 S.Ct. at 627, 1 L.Ed.2d at 644-645; State v. Milligan, 71 N.J. 373, 383, 365 A.2d 914 (1976). We must assay the fairness of nondisclosure in the context in which it arises  the trial of criminal charges in which the State relied on testimony from the informer as its principal witness.
It is now well settled that the privilege is normally inapplicable where the informer "is an active participant in the crime for which defendant is prosecuted." State v. Milligan, supra, 71 N.J. at 383-384, 365 A.2d 914; State v. Oliver, 50 N.J. 39, 42 and 45, 231 A.2d 805 (1967); State v. Roundtree, 118 N.J. Super. 22, 31-32, 285 A.2d 564 (App.Div. 1971). This proposition also holds true "where a defense of entrapment seems reasonably plausible." State v. Milligan, supra, 71 N.J. at 384, 365 A.2d 914; Roviaro v. United States, supra, 353 U.S. at 64, 77 S.Ct. at 629, 1 L.Ed.2d at 647; State v. Dolce, 41 N.J. 422, 435-436, 197 A.2d 185 (1964).
Unlike the facts in cases such as State v. Milligan, supra, and State v. Varona, 242 N.J. Super. 474, 480, 577 A.2d 524 (App.Div.), certif. denied, 122 N.J. 386, 585 A.2d 389 (1990), where the informer was a mere tipster, here Capola and De La Roche were active participants. They negotiated, set up and *23 consummated the sale of the drugs. There could never be any greater participation in a drug deal by an informer than occurred here.
Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) is quite similar to the present case, and it controls the disposition in this case. There, the primary witness against the defendant in a drug case testified that the name he used during the trial was not his real name. During cross-examination defense counsel asked him to state his real name and his address. The trial judge sustained the prosecutor's objection. In overturning the conviction, the Supreme Court observed that "when the credibility of a witness is at issue, the very starting point in `exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness's name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." Smith v. Illinois, supra, 390 U.S. at 131, 88 S.Ct. at 750, 19 L.Ed.2d at 959 (emphasis supplied) (footnote omitted) (quoting Pointer v. Texas, supra, 380 U.S. at 404, 85 S.Ct. at 1068, 13 L.Ed.2d at 926). See also Alford v. United States, 282 U.S. 687, 692-693, 51 S.Ct. 218, 219-220, 75 L.Ed. 624, 628 (1931).
The State argues that State v. Postorino, 253 N.J. Super. 98, 105, 601 A.2d 223 (App.Div. 1991) recognized that there are exceptions to the Smith v. Illinois rule requiring that a defendant be permitted to ask a witness his or her name during cross-examination. Although the Postorino court did recognize that the constitutional right to confrontation is not unlimited, id. at 104, 601 A.2d 223, Postorino is of little or no support for the State's position in this case.
Postorino was not an informants' privilege case because the witness's true name and identity were already known to the defendant. Indeed, the court acknowledged that it was "not *24 dealing with an issue of informant privilege," and that the witness was not "a paid, professional confidential informant with a continuing law enforcement relationship and his real identify has been disclosed." Id. at 107, 601 A.2d 223. The issue in Postorino was whether the defendant should be permitted to ask the witness's new name and new address which the witness had had for the three years after the criminal event and prior to the trial. During this time, the witness's family remained at the prior address which was known to defendant. Defendant was aware that no "rap sheet" existed under the witness's new name.
Defendant's application to compel disclosure of the witness's new name and address was granted in the trial court, and we granted leave to appeal. Expressly relying on the fact that defendant was aware of the witness's true name and prior residence, and the fact that defendant had enough information to conduct an independent investigation of the witness's prior background, we remanded to conduct an in camera Rule 8 proceeding to ascertain what testimony the witness might offer respecting his current background over the last three years without disclosing his latest name and address. Id. at 108, 601 A.2d 223. Following the Evid.R. 8 hearing, the judge was directed to reconsider whether defendant still needed the witness's new name and address. Ibid.
Thus, it is clear that the facts in Postorino distinguish it from the present case. Postorino knew the witness's true name and his address up to three years earlier. That information alone can be of substantial assistance to a trained investigator, thereby enabling Postorino to conduct an independent investigation. Moreover, the Evid.R. 8 hearing is designed to lead to additional information which may result in disclosure of the witness's new name and address. In contrast, defendant Florez has never known Capola's real name or address.
We are persuaded that where the informer was an active participant in the criminal event and has testified for the State *25 as its principal witness, the balancing of the defendant's need for disclosure against the public interest in protecting the flow of information articulated in Roviaro should generally result in disclosure. See Smith v. Illinois, supra; United States v. Silva, 580 F.2d 144, 146-147 (5th Cir.1978); State v. Milligan, supra, 71 N.J. at 383, 365 A.2d 914; State v. Oliver, supra; State v. Infante, 116 N.J. Super. 252, 257, 282 A.2d 44 (App.Div. 1971). This proposition highlights an important distinction between Roviaro, McCray and Smith. In both Roviaro and McCray, the informant did not testify for the government; however in Smith, the informant did testify for the government. Additionally, the majority in Smith rejected the idea expressed by Justice White in a concurring opinion that the personal safety of a principal witness for the prosecution should be the basis for nondisclosure of the witness's true name and address. See Smith v. Illinois, supra, 390 U.S. at 133, 88 S.Ct. at 750, 19 L.Ed.2d at 960, n. 8.
Defendant Florez has always contended that disclosure of Capola's identity was essential because the entire defense rested upon credibility. Defendant and Capola testified and gave entirely different versions of what happened. As was observed in Smith v. Illinois, supra, where credibility is a significant issue and the informer is a direct participant in the crime and has testified for the prosecution, identification of the informer's true name and address is essential to a proper exercise of the right to cross-examination of the prosecution's key witness.
We recognize that the informer is a vital part of society's defensive arsenal, and the basic rule protecting his or her identity rests upon that belief. But where the informant becomes the primary witness against a defendant in the trial of the criminal charges, "the need for a truthful verdict outweighs society's need for the informer privilege." State v. Burnett, 42 N.J. 377, 386, 201 A.2d 39 (1964). Here, defendant sought disclosure of Capola's true name and address because he anticipated correctly that Capola would present testimony for the *26 State as the State's primary witness in the trial of the criminal charges where the fundamental issue of guilt or innocence was to be decided.
Under the circumstances surrounding this case, a proper balancing of the interests of the State against defendant's rights to prepare for his defense and to conduct a meaningful cross-examination, renders nondisclosure of Capola's true name and address a mistaken exercise of discretion. Without Capola's true name and address a "hood" or "shield" still covered the witness in terms of the right to conduct a proper cross-examination. The physical removal of the "hood" or "shield" satisfied only part of the need for face-to-face confrontation in the courtroom. Capola was still shielded from the type of investigation required by Smith v. Illinois, supra, without which defendant was deprived of his "secured" right to conduct a proper cross-examination of the key prosecution witness.
We are compelled to reemphasize that this case involves a "reverse sting" operation. Capola was paid well for his services which concededly involved dangerous activities. The danger to him and, perhaps, his family was undoubtedly a substantial factor in determining the brokerage commission. We believe that a program such as the federal Witness Protection Program, 18 U.S.C. §§ 3521-3528, was designed to protect informers and their families who work and give testimony for the government in areas involving high risk to life or limb. On balance, defendant's constitutional right to a proper confrontation may not be sacrificed for the safety of a highly paid informer who is an active participant in the crime, rather than merely a tipster, and who testifies as the State's primary witness. We perceive no reason why Capola should be treated any differently than a police officer who works undercover in drug trafficking as an agent of the government. The undercover agent must give testimony while using his or her true name *27 and disclose information, if requested, identifying the witness with his or her environment.
We therefore reverse the order denying the motion to compel disclosure of Capola's true identity and address. If Capola is in a federal witness protection program, defendant should be so informed. His new name and address since being in the program may not need to be disclosed. Any arrest or conviction under any new name, however, must be disclosed.

III
Defendant contends further that he was prejudiced in his defense of entrapment by the nondisclosure by the prosecutor during pretrial motions that De La Roche was an informer in this case. The defense of entrapment was submitted to the jury. Defendant contended that the State supplied the money and the drugs. We believe a substantial issue of entrapment was presented. State v. Milligan, supra, 71 N.J. at 384, 365 A.2d 914.
Prior to trial, counsel for defendant learned that De La Roche also acted as an informer in this case. Defense counsel sought discovery including his address so that De La Roche could be subpoenaed. He was not living at the last known address provided. As an alternative, defense counsel requested the prosecutor to produce him as a witness. The prosecutor represented to the court and counsel that De La Roche was not an informer in this case. This turned out to be an inaccurate representation.
At the beginning of the second day of trial, just prior to the opening statements, the prosecutor informed the court and counsel that De La Roche was an informer in this case, and in that capacity, he introduced Capola to defendant and co-defendant. The prosecutor stated that he had been unable to locate De La Roche. Counsel for defendant then urged the court to dismiss the indictment because, according to the defense, De La Roche provided the money involved in this transaction, and that *28 he was needed to support the defense of entrapment. The judge concluded that the prosecutor had not purposefully failed to produce De La Roche and that the defense had not been prejudiced by De La Roche's absence. The judge denied all of defendant's applications.
We agree that the prosecutor delayed for an unreasonable period of time in supplying information that De La Roche was a participant in the criminal event. Disclosure of that information in a timely fashion was required by Brady v. Maryland, supra. Our reversal of the conviction eliminates any prejudicial effect since the required disclosure has been made. Should there be a retrial, however, the prosecutor must make a diligent effort to locate the whereabouts of De La Roche. See United States v. Suarez, 939 F.2d 929, 932 (11th Cir.1991); United State v. Cervantes, 542 F.2d 773, 775 (9th Cir.1976).

IV
Defendant contends, still further, that the jury charge on entrapment was erroneous. As noted before, the entrapment defense was based on the contention that the State supplied both the drugs and the money. The judge charged statutory entrapment, based on N.J.S.A. 2C:2-12. There was a request to charge only due process entrapment under State v. Talbot, 71 N.J. 160, 168, 364 A.2d 9 (1976). See State v. Johnson, 127 N.J. 458, 606 A.2d 315 (1992) for a comprehensive discussion of both statutory and due process entrapment. In the event of a retrial, the judge should only charge the jury based on the form of entrapment requested. See also Jacobson v. United States, 503 U.S. ___, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992); State v. Fogarty, 128 N.J. 59, 65-66, 607 A.2d 624 (1992).
Defendant raises another issue which is interrelated to the entrapment defense. He contends that the use of special *29 interrogatories deprived him of fair trial. The following special interrogatories were submitted to the jury:
1. How do you find the defendant Alex Florez, of a charge of Conspiracy to Possess Cocaine With Intent to Distribute?
2. How do you find the defendant Harold Garcia, of a charge of Conspiracy to Possess Cocaine with Intent to Distribute?
NOTE: If you answer both questions 1 and 2 Not Guilty do not answer question 3 and go to question 4. But if you answer either or both questions 1 and 2 Guilty, please answer question 3.
3. Did defendants prove by a preponderance [of] the evidence that the money and cash totaling $16,019.27 used for that incident was supplied to them by law enforcement officers or their agents or informants?
The jury answered the first two questions by finding defendant guilty, and it answered the third question with a "No." The purpose of the third question was to obtain from the jury its factual findings so that the judge could determine the legal significance of the police conduct. State v. Talbot, supra, 71 N.J. at 168-169, 364 A.2d 9; State v. Medina, 201 N.J. Super. 565, 578, n. 3, 493 A.2d 623 (App.Div. 1985). Once the jury answered the third question "No," there was no factual basis for the judge to conclude that there was entrapment. Contrary to defendant's assertion, the third question did not submit an improper question to the jury. The three questions submitted were not violative of State v. Simon, 79 N.J. 191, 398 A.2d 861 (1979), or R. 3:19-1(b).
We have considered the remaining issues raised by defendant and find they are clearly without merit. R. 2:11-3(e)(2).
The judgment of conviction is reversed. The matter is remanded to the Law Division for further proceedings.
NOTES
[1] Harold Garcia has filed a separate appeal under A-5288-90T4. That appeal is not ready for calendaring.