693 A.2d 1267

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DARWIN COOPER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 19, 1997—Decided June 4, 1997.

Before Judges HAVEY, BROCHIN and KESTIN.

*Susan L. Reisner,* Public Defender, attorney for appellant (*Linda Mehling,* Assistant Deputy Public Defender, of counsel and on the letter brief).

*Arthur J. Marchand,* Cumberland County Prosecutor, attorney for respondent (*David D. Weber,* Assistant Prosecutor, of counsel and on the letter brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

Defendant was charged with and convicted of four third degree crimes involving cocaine: possession, possession with intent to distribute, distribution, and distribution in a school zone. Three of the convictions were merged, and a prison term of five years with three years of parole ineligibility was imposed. For distribution in a school zone, defendant was sentenced to a separate, concurrent five-year prison term with three years of parole ineligibility. Monetary sanctions premised upon two convictions were ordered: $2,000 in DEDR penalties, $150 in SSCP penalties, $100 in VCCB assessments, and $100 in lab fees; along with a twelve-month driver's license suspension.

On appeal, defendant raises the following issues:

POINT I  THE TRIAL COURT'S REFUSAL TO DISCLOSE THE IDENTITY OF THE CONFIDENTIAL INFORMANT, WHO WAS PRESENT DURING THE TRANSACTION AND THEREFORE WAS A CRITICAL WITNESS, DENIED DEFENDANT DUE PROCESS OF LAW AND A FAIR TRIAL. (Partially Raised Below)

POINT II  THE SENTENCE ON COUNT FOUR SHOULD BE MERGED WITH THE SENTENCE ON COUNT THREE.

The charges against defendant arose from undercover work of the Millville Police Department. The only witnesses at trial were Officer Birnstiel and Detective Harvey. Birnstiel, a recent police academy graduate, had commenced his active duty with the Department three weeks before the date of the incident which resulted in defendant's arrest. On that date, he was re-assigned from regular service on uniform patrol to plain-clothes duty for the purpose of making drug purchases as part of an investigation conducted by Harvey.

Birnstiel rode as the passenger in an automobile to the Wade East apartment complex. The only other occupant of the car was the driver, an unidentified person who, Detective Harvey testified, was "a confidential informant [he had] used in the past." The presence of the "confidential informant" was not noted in either Birnstiel's or Harvey's written report of the incident.

When the car came to a stop after entering the apartment complex, three individuals approached the passenger side of the vehicle and leaned over to speak through the open window. Birnstiel stated that he wished to make a drug purchase. In exchange for twenty dollars, one of the individuals handed him a glassine bag containing white powder, encouraging Birnstiel to taste the contents for quality on the spot. Birnstiel felt pressured by the circumstances and made an excuse to leave quickly. As he departed, the seller stated "that to get any more, to contact him when we came back, or any other time, to ask for Boo." Birnstiel asked the seller whether he was Boo, "and he said, yes, just ask for Boo."

Birnstiel also testified that the area was well lit and that he could see clearly. In his written report as related in his testimony, he described the seller of the drugs as "a medium build person and approximately 5'8["], black male, ... [wearing] an orange tank top and a ... black ball cap."

Birnstiel returned to police headquarters about an hour after the incident. He handed in the glassine bag of white powder after

initialing it,[1] and met with Harvey to recount what had occurred at Wade East. When Birnstiel mentioned that the seller of the drugs had referred to himself as Boo, Harvey left the room and returned minutes later with a photograph which he displayed to Birnstiel without comment. Birnstiel immediately identified the person depicted as the individual who had sold him the drugs.

Birnstiel identified defendant in court as the same person. He noted the following physical features as aiding in the identification: "the shape of his head, ... his light moustache and his lips and his eyes, his one left eye is kind of—basically, the whole shape of his head, and the facial features."

On cross-examination, Birnstiel acknowledged that, in the description of the seller contained in his report and conveyed to Harvey, he had noted no special identifying marks such as scars or tattoos. It was stipulated at trial that defendant had tattoos on both of his arms on the date of the drug transaction, and the tattoos were displayed to the jury during trial.

Birnstiel testified that he was "scared" and "fearful" during the transaction. He also testified that after the drug purchase had been made, the seller "went around to the other side of the vehicle, to the driver's side of the vehicle, and had conversation with the other subject in the car and myself and that just lasted a few seconds, and then the subject told us himself to get ahold of him again as being Boo...."

Defendant was arrested ten days later. Because neither Birnstiel's nor Harvey's report mentioned the presence of the "confidential informant," neither the prosecutor nor defense counsel was aware of that fact. When the prosecutor discovered it as he prepared for trial the day before the matter was scheduled, he immediately notified defense counsel. Defense counsel made no

---

[1] Subsequent laboratory analysis identified the contents as cocaine.

pretrial motion in this regard.[2] The issue was formally raised only after both sides had rested in the one-day trial. The State made an application

> with respect to a charge concerning confidential informants. The implication [defense counsel] brought out through the witnesses that they did not include in their police reports the fact a confidential informant was in there. Naturally, he's going to argue that yet that's another witness that could have testified here today.
>
> I would like to, with the Court's permission, draft an instruction that the State has an evidence rule or there is an evidence rule which protects confidential informants, their identities, and that, therefore, they are not a witness that could typically come into court and testify.

Defendant moved to dismiss the charges "for the failure of the officers to provide proper discovery." The trial judge denied both motions.

Defendant's summation focused on Birnstiel's identification, stressing Birnstiel's inexperience; his fear and uneasiness during the drug transaction; the circumstances of the transaction; the general nature of the description recounted in Birnstiel's written report, which omitted any mention of tattoos despite the fact that the seller was wearing a tank top; and the suggestiveness of the photographic identification via a single photograph rather than an array. Defense counsel also denigrated the police officers' explanation that their reports failed to mention the other person who had accompanied Birnstiel in the car because they regarded that fact as being of no importance.

The prosecutor depicted the testimony adduced at trial as suggesting that Birnstiel's identification was reliable; that Birnstiel's failure to mention tattoos, given the circumstances, had no capacity to oppugn his identification of defendant as the seller;

---

2 A pretrial motion objecting to Birnstiel's out-of-court and in-court identification of defendant on the ground that the photo identification had been unduly suggestive, resulted in a hearing pursuant to *United States v. Wade*, 388 *U.S.* 218, 87 *S.Ct.* 1926, 18 *L.Ed.*2d 1149 (1967), with Birnstiel as the witness. During the hearing, defense counsel stated: "Judge, I'm going to withdraw my objection to the in-court identification. I'm ready to proceed with the trial." The *Wade* hearing was, accordingly, aborted.

and that there was little or no suggestiveness in Harvey's display of a single photograph.

During the course of its deliberations, the jury asked a question: "Could the confidential informant be subpoenaed?" The trial judge responded:

> There are certain reasons why I can't get involved in a whole lot of detail in providing the answer to the question, but let me answer it to you this way. Yes, the confidential informant could, under certain circumstances, be subpoenaed. For instance, the State does have the authority to subpoena the confidential informant if the State chooses to do so.
>
> Now, as to the defendant, since the identity of a confidential informant—that's why they're called confidential informants, is protected. The way the rules work, the defendant would be required to make a motion to have the identity of the confidential informant revealed, and if a Court determines that the identity ought to be disclosed, or revealed, then the defendant would have the authority, if the defendant so chose, to subpoena the confidential informant.

Effectively, therefore, at least to some extent, the trial judge gave the jury the charge previously sought by the State which had been denied.

In the circumstances depicted herein, we conclude that defendant was denied a fair opportunity to develop an adequate defense when the fact that another person had accompanied the undercover officer was concealed until the literal eve of trial. We do not regard this matter, as it is necessarily framed, to require us to engage in the kind of fact-sensitive weighing of competing policy considerations that is normally called for when disclosure of the identity of a confidential informant is sought and the privilege embodied in *N.J.R.E.* 516 (*N.J.S.A.* 2A:84A–28) is invoked. *See, e.g., Roviaro v. United States,* 353 *U.S.* 53, 77 *S.Ct.* 623, 1 *L.Ed.*2d 639 (1957); *State v. Oliver,* 50 *N.J.* 39, 231 *A.*2d 805 (1967). We need not reach those issues on the record before us.

It is clear that, with the involvement of a third person undisclosed until trial impended, defendant had no effective opportunity to address the significance or impact of that information. Had that fact been noted in the police reports, as it should have been, defendant would have had a fair opportunity to move for disclosure of the "confidential informant's" identity and the State would

have had an effective opportunity to invoke the privilege of *N.J.R.E.* 516. The trial court, doubtless, would have been furnished with a basis for determining whether the person who accompanied Officer Birnstiel was truly a confidential informant as the law defines that status, *see, e.g., State v. Postorino,* 253 *N.J.Super.* 98, 107, 601 *A.*2d 223 (App.Div.1991), and, if so, whether the required balance of considerations called for the disclosure of that person's identity notwithstanding the status. *See N.J.R.E.* 516(b).

In such a proceeding, the trial court might have been called upon, as well, to determine whether the privilege had been waived through disclosure of the individual's identity by involvement in the drug transaction. *See N.J.R.E.* 516(a); *Postorino, supra,* 253 *N.J.Super.* at 107–08, 601 *A.*2d 223; Biunno, *Current N.J. Rules of Evidence,* comment 3 on *N.J.R.E.* 516 (1996–1997). In deciding that issue, the trial court would have considered the significance of the facts that the seller of the drugs engaged in conversation with the third person during the transaction, and that ten days passed between the date of the incident and the time of defendant's arrest. *See Roviaro, supra,* 353 *U.S.* at 64–65, 77 *S.Ct.* at 629–30, 1 *L.Ed.*2d at 647; *State v. Booker,* 86 *N.J.Super.* 175, 179–80, 206 *A.*2d 365 (App.Div.1965). In evaluating the fair trial implications, the trial court also would have been required to assess the qualities of Birnstiel's identification of defendant as the seller. The weaker Birnstiel's testimony was in this regard, the greater would have been defendant's entitlement to access to the only other person who accompanied Birnstiel and witnessed the transaction. These latter considerations could also have been seen as additional grist for the mill of a *Wade* hearing, but revelation of the problem as trial loomed the following day afforded defendant no fair opportunity to expand the actual *Wade* hearing to include the necessary inquiry.

In sum, we hold that it is not for the police to determine whether an individual who cooperates with them qualifies as a confidential informant under *N.J.R.E.* 516 so as to render the

nondisclosure privilege applicable in a criminal trial. That authority is effectively conferred upon the police, however, when a trial is permitted to proceed without appropriate remedy for police failure to report the involvement of a purported confidential informant in a transaction giving rise to the charges. Considerations derived from both a defendant's due process rights and the court's authority to supervise the conduct of criminal trials dictate a less permissive approach. When a person who may be a confidential informant is involved in an illicit transaction, the police must report the fact of that participation without identifying the individual, so that the parties in an ensuing criminal prosecution will have a fair opportunity to seek judicial evaluation of the facts and policies that inform the privilege, and a determination of its application in the light of all pertinent considerations, pre-eminently the defendant's fundamental right to a fair trial. *See State v. Florez*, 134 *N.J.* 570, 578–83, 636 *A.*2d 1040 (1994); *State v. Milligan*, 71 *N.J.* 373, 380–94, 365 *A.*2d 914 (1976); *State v. Roundtree*, 118 *N.J.Super.* 22, 29–33, 285 *A.*2d 564 (App.Div.1971).

█ Defense counsel's failure to move for a continuance of the trial so that such a motion could be made efficaciously is no impediment to correction of the error which infected this trial. The trial court's omission to address the newly arisen problem by appropriate measures, taken together with its supplemental charge in response to the jury's question, was clearly capable of producing an unjust result. *R.* 1:7–5.

█ The police officers' failure to disclose the involvement of a third party denied defendant a realistic and adequate opportunity to protect his fair trial interests. This is especially so in the light of the close questions that were presented in respect of Officer Birnstiel's identification of defendant as the seller of the drugs. The conviction must, therefore, be reversed and the matter remanded for a new trial.

Although this disposition renders moot the sentencing issue raised by defendant, we note that the State concedes that the school zone conviction should have been merged with the other

crimes. Only a single custodial term was authorized and the monetary sanctions ordered should have reflected a single conviction. *See State v. Gonzalez*, 123 *N.J.* 462, 588 *A.*2d 816 (1991).

Reversed and remanded.