712 A.2d 217

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. GERONE WRIGHT, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 17, 1997—Decided June 12, 1998.

Kestin, J.A.D., concurred and filed opinion.

444

Before Judges MUIR, Jr., KESTIN, and STEINBERG.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Michele A. Adubato*, Designated Counsel, on the brief).

*Peter Verniero*, Attorney General, attorney for respondent (*John E. Adams, Jr.*, of counsel and on the brief).

The opinion of the court was delivered by

STEINBERG, J.S.C.

On this appeal, we are confronted by issues of whether double jeopardy or fundamental fairness preclude retrial of defendant on drug trafficking charges after the trial court set aside defendant's conviction for the failure of the investigating police to apprise the prosecutor of the use of a confidential informant in the events giving rise to the indictment. The police failure prevented prosecutorial compliance with *R.* 3:13–3 discovery or, alternatively, prevented the prosecutor from seeking a protective order under *R.* 3:13–3(f). We conclude neither double jeopardy nor the fundamental fairness doctrine preclude retrial. Consequently, we affirm the trial judge's order denying defendant's motion to dismiss the indictment against him.

A Cumberland County grand jury indicted Gerone Wright (defendant), along with his brother, codefendant Alfred Wright, for third-degree possession of a controlled dangerous substance (CDS) (cocaine), contrary to *N.J.S.A.* 2C:35–10a(1) (count one); third-degree possession of CDS (cocaine) with intent to distribute, contrary to *N.J.S.A.* 2C:35–5b(3) (count two); third-degree distribution of CDS (cocaine), contrary to *N.J.S.A.* 2C:35–5b(3) (count three); third-degree possession of CDS (cocaine) with intent to distribute within 1,000 feet of school property, contrary to

N.J.S.A. 2C:35–5 and 7 (count four); and third-degree conspiracy to distribute CDS (cocaine), contrary to N.J.S.A. 2C:5–2 and N.J.S.A. 2C:35–5b(3) (count five).

On July 30, 1992, Investigator Charlene Banks (now Charlene Banks Eugene) of the Narcotics Task Force Unit in Burlington County began working undercover with the Cumberland County Narcotics Task Force Unit and the Vineland Police Department. As part of the undercover investigation she was assigned to purchase narcotics from defendant, Gerone Wright, or his brother, codefendant Alfred Wright, while working with a confidential informant who was to introduce her to defendants.

Investigator Banks was told that the confidential informant had made arrangements for the transaction, which would be finalized by placing a call to defendant's pager for confirmation. The deal would be consummated after the page.

At approximately 9:00 p.m. on July 30, 1992, the confidential informant gave the pager number to Investigator Banks while at a WaWa convenience store in Vineland. Investigator Banks then dialed the number from a public telephone located in the parking area outside of the WaWa. The confidential informant held the telephone receiver until he was sure the page had gone through.

After placing the page, Investigator Banks hung up the receiver. She and the confidential informant waited for a return call. The telephone did not ring. Soon thereafter, however, defendant drove a red Renault into the parking lot.

Defendant got out of the Renault and walked toward Investigator Banks and the confidential informant. They discussed the narcotics transaction. Defendant spoke directly with the confidential informant who then relayed the terms of the deal to Investigator Banks. They agreed to a purchase of a quarter of an ounce of cocaine for $250. At the end of the negotiation, defendant directed the confidential informant to a movie theater parking lot in order to complete the transaction.

Pursuant to defendant's instructions, Investigator Banks and the confidential informant drove to the parking lot adjacent to a nearby movie theater. Investigator Banks parked her vehicle next to an empty space, anticipating defendant would park there.

Detective Sergeant Daniel Schontz and Officer Joseph Lowry conducted surveillance near a driveway entrance to the movie theater parking lot. Sergeant Schontz observed an individual on a motorcycle turn into the driveway leading into the movie theater parking lot, and head towards the movie. Approximately ten minutes later, the motorcycle exited the same driveway. Officer Lowry obtained the motorcycle's complete license plate number. A motor vehicle look-up revealed that the motorcycle was registered to Alfred Wright.

Fifteen minutes later the motorcycle again entered the theater driveway. Schontz, who was familiar with Alfred Wright, was sure that Alfred Wright was the person on the motorcycle. Defendant never appeared at the theater parking lot.

The cyclist drove over to Investigator Banks and the confidential informant and discussed the cocaine purchase. His black helmet and visor covered his face. Investigator Banks was never able to identify him. The cyclist stated he wanted all the money for the purchase in advance. However, Investigator Banks preferred to pay half in advance and the other half after inspecting the cocaine. The cyclist agreed. After obtaining half the purchase price from the confidential informant, who had received it from Investigator Banks, the cyclist left saying he would be right back because he had not brought the cocaine with him. He returned fifteen minutes later.

Upon his return, the cyclist told the confidential informant he had the cocaine but he did not want to deal directly with Investigator Banks. The confidential informant told the cyclist that Investigator Banks wanted to see the cocaine before she would pay the rest of the money. The cyclist gave the confidential informant a paper towel containing four plastic sandwich bags full

of cocaine. The confidential informant then gave the bags to Investigator Banks.

After examining the cocaine, Investigator Banks paid the confidential informant the rest of the money. The confidential informant, in turn, gave the money to the cyclist. About ninety minutes later, Investigator Banks positively identified a photograph of defendant as the person who initially arranged the cocaine sale at the WaWa parking lot.

Investigator Banks' report did not indicate the existence of the confidential informant or the role played by him in the transaction. In fact, there was no mention of the confidential informant in any of the reports generated by the undercover investigation.

Immediately prior to trial, a *Wade* [1] hearing was conducted in order to determine whether Investigator Banks' pretrial identification of either defendant was admissible. Investigator Banks did not mention the confidential informant during the course of her direct examination. However, counsel for Alfred Wright was aware of the existence of the confidential informant and was able to draw it out on cross-examination. The trial judge found the pretrial identification to be admissible. Neither defendant made any application for relief by virtue of the initial withholding and belated disclosure of the existence of the confidential informant and the role played by him in the transaction. Neither defendant sought to adjourn the trial to investigate further or prepare.

The trial began the next day. After a four day trial, the jury found defendants guilty of all charges.

Prior to sentence defendants moved to vacate their conviction and asked the trial judge to order a new trial. *R.* 3:20–1. The trial judge granted the motion in light of his conclusion that the confidential informant played an integral and substantial part in the investigation. *See Roviaro v. United States,* 353 *U.S.* 53, 60–61, 77 *S.Ct.* 623, 628, 1 *L.Ed.*2d 639, 645 (1957)(disclosure of

---

[1] *United States v. Wade,* 388 *U.S.* 218, 87 *S.Ct.* 1926, 18 *L.Ed.*2d 1149 (1967).

informer's identity required if essential to a fair determination of the issues); *State v. Florez*, 261 *N.J.Super.* 12, 22–23, 617 *A.*2d 670 (App.Div.1992), *aff'd,* 134 *N.J.* 570, 636 *A.*2d 1040 (1994)(disclosure of informant required when he is an active participant in the crime). The trial judge concluded the State was initially required to disclose the existence of the confidential informant. Defendants then would have had the right to make an application to the court to disclose the identity of the confidential informant.[2] The court, not the police, would have decided whether the identity of the confidential informant should have been protected or disclosed. Here, by withholding the existence of the confidential informant, the trial judge concluded the State withheld evidence that significantly affected defendants' ability to cross-examine the witnesses.

Criminal discovery rules require the State to provide defendant with the names and addresses of any persons whom the prosecutor knows to have relevant evidence or information, including a designation by the prosecutor as to which of those persons may be called as witnesses. *R.* 3:13–3(c)(6). However, the State may seek a protective order to preclude disclosure of the confidential informant's name as an alternative to discovery disclosure. *R.* 3:13–3(f). In the event the State seeks a protective order, the trial judge must strike the appropriate balance between maintaining the confidentiality and the right of the defendant to a fair trial.

In granting the new trial, the trial judge specifically found that the prosecutor was unaware of the existence of the confidential informant and that the decision to withhold the existence of the confidential informant was made by the law enforcement officer in order to protect him from harm.

Prior to retrial, defendants moved to dismiss the indictment claiming that double jeopardy barred further prosecution. *U.S. Const.* amend. V; *N.J. Const.* art. I, ¶ 11. The trial judge denied the motion. At retrial, the jury found Alfred Wright not guilty on

---

[2] Alternatively, the State could have moved for a protective order pursuant to *R.* 3:13–3(f)(1) and (2).

all counts, and found defendant guilty on count one, possession of CDS; count two, possession of CDS with the intent to distribute; and count five, conspiracy to distribute CDS. Immediately prior to sentence, with the consent of the State, the trial judge dismissed count five, and sentenced defendant to five years of imprisonment on count two, to run consecutive to a sentence defendant was serving for an unrelated conviction. The trial judge imposed a five-year sentence on count one, to run concurrent to count two. The judge also imposed the appropriate monetary penalties, assessments and drivers license suspension. Defendant appeals. We affirm.

On appeal, defendant raises the following issues:

POINT I  THE DEFENDANT'S PROSECUTION WAS BARRED BY THE PRINCIPLES OF DOUBLE JEOPARDY AND FUNDAMENTAL FAIRNESS.

POINT II  THE ADMISSION OF HEARSAY TESTIMONY VIOLATED THE DEFENDANT'S RIGHT TO A FAIR TRIAL.  (NOT RAISED BELOW).

POINT III  THE DEFENDANT'S NOTICE OF MOTION FOR PRODUCTION OF THE RELATED ATTORNEY GENERAL INVESTIGATION SHOULD HAVE BEEN GRANTED.

POINT IV·  THE CONDUCT OF THE COURT IN QUESTIONING THE DEFENDANT AND CERTAIN OF ITS COMMENTS TO THE JURY DEPRIVED THE DEFENDANT OF A FAIR TRIAL.

POINT V  THE COURT'S CHARGE OF CONSTRUCTIVE POSSESSION WAS ERRONEOUS.  (PARTIALLY RAISED BELOW).

POINT VI  THE COURT'S RESPONSE TO A JURY QUESTION DURING DELIBERATIONS WAS ERRONEOUS.

POINT VII  THE VERDICT OF GUILTY FOR POSSESSION AND POSSESSION WITH INTENT TO DISTRIBUTE CDS ARE AGAINST THE WEIGHT OF THE EVIDENCE AND SHOULD BE VACATED.

POINT VIII  IT WAS ERROR FOR THE COURT TO FAIL TO MERGE THE OFFENSE OF POSSESSION AND POSSESSION WITH INTENT TO DISTRIBUTE.  (NOT RAISED BELOW).

POINT IX  THE DEFENDANT'S MOTION FOR NEW TRIAL SHOULD HAVE BEEN GRANTED BY THE COURT.

POINT X  THE DEFENDANT WAS DENIED HIS RIGHT OF ALLOCUTION BY THE SENTENCING COURT PRIOR TO THE IMPOSITION OF SENTENCE.

POINT XI  THE SENTENCE IMPOSED UPON THE DEFENDANT IS EXCESSIVE AND SHOULD BE REDUCED.  (NOT RAISED BELOW).

We first address defendant's contention that his retrial constituted an infringement of the federal and state constitutional double jeopardy prohibitions. *U.S. Const.* amend. V; *N.J. Const.* art. I, ¶ 11.

■ Initially, it is important to note that, while the double jeopardy language of the federal and state constitutions differ, the separate clauses are considered "co-extensive in application." *State v. Rechtschaffer*, 70 *N.J.* 395, 404, 360 *A.2d* 362 (1976).

■ The double jeopardy clause serves three related purposes:

1. It protects against a second prosecution of an offense after acquittal of the same offense;

2. It protects against a second prosecution of an offense after conviction of the same offense;

3. It protects against multiple punishments for the same offense.

*North Carolina v. Pearce*, 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.2d* 656, 664–65 (1969), *overruled on other grounds*, 490 *U.S.* 794, 109 *S.Ct.* 2201, 104 *L.Ed.2d* 865 (1989).

This case involves a successful post-trial collateral attack on a conviction. The trial judge granted both defendants' applications to set aside the convictions because he felt their ability to properly defend themselves was severely compromised by the belated disclosure of the existence of the informant at the *Wade* hearing on the day before the first trial. However, the trial judge refused to dismiss the indictment stating he did not feel the State's actions were so egregious they amounted to misconduct of a nature that would cause him to abort the entire proceeding and dismiss the indictment.

■ As a general rule, the double jeopardy clause's prohibition against successive prosecutions does not prevent the retrial of a defendant who succeeds after verdict, in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to the conviction. *See Lockhart v. Nelson*, 488 *U.S.* 33, 38, 109 *S.Ct.* 285, 289, 102 *L.Ed.2d* 265, 272 (1988). There are some exceptions to that

general rule, but none are applicable here. Similarly, although defendant suggests otherwise, the exception which bars retrial where the prosecutor intentionally engages in misconduct to procure a mistrial to get a second bite at the apple does not apply. *See Oregon v. Kennedy*, 456 *U.S.* 667, 102 *S.Ct.* 2083, 72 *L.Ed.*2d 416 (1982). The trial court found no prosecutorial misconduct. For that reason the mistrial exception set forth in *Kennedy* does not apply.

■ Defendant's contention that to require him to stand trial again would place him in jeopardy is not persuasive. He sought reversal of his conviction by filing the motion for a new trial based on the failure of the police to disclose the use of the confidential informant and was successful. Just as appellate reversal on grounds the verdict is against the weight of the evidence (a decision that can also be made by the trial judge) does not preclude retrial on double jeopardy principles, *see Tibbs v. Florida*, 457 *U.S.* 31, 47, 102 *S.Ct.* 2211, 2221, 72 *L.Ed.*2d 652, 665–66, the trial judge's grant of defendant's motion here does not terminate jeopardy. *See United States v. Wood, supra*, 958 *F.*2d at 970. Under the circumstances here, retrial after vacation of a jury guilty verdict is not the type of oppression targeted by the double jeopardy clauses of the federal and state constitutions. *See Tibbs, supra*, 457 *U.S.* at 40, 102 *S.Ct.* at 2217, 72 *L.Ed.*2d at 660.

■ Although we find that double jeopardy did not bar defendant's retrial, we must consider defendant's alternative contention that fundamental fairness precluded subjecting him to a second trial. Unquestionably, there is an interaction between the principles of double jeopardy and fundamental fairness. *State v. Gallegan*, 117 *N.J.* 345, 355, 567 *A.*2d 204 (1989); *State v. Dunns*, 266 *N.J.Super.* 349, 378, 629 *A.*2d 922 (App.Div.), *certif. denied*, 134 *N.J.* 567, 636 *A.*2d 524 (1993). The doctrine of fundamental fairness prohibits conduct by law enforcement officials "that perverts the judicial process and turns it into a prosecutorial tool." *State v. Sugar*, 84 *N.J.* 1, 14, 417 *A.*2d 474 (1980). Fundamental fairness on occasion requires a court to prohibit conduct that does

not transgress the constitution. *Id.* at 15, 417 *A.*2d 474. The doctrine is directed at both judicial integrity and the actions of other officials which may impugn that integrity. *Ibid.* In *Sugar*, law enforcement officers unlawfully eavesdropped on two conversations in jail between defendant and his attorney. These conversations' did not reveal trial strategy. Our Supreme Court, while acknowledging that the conduct of the law enforcement officers was outrageous and unconscionable, refused to preclude prosecution of defendant, who had not yet been indicted, for murder of his wife. The court did require exclusion, both from trial and a Grand Jury, of the tainted witnesses and evidence. The State was required to establish beyond a reasonable doubt that it could conduct a prosecution with unsullied evidence and witnesses even before an indictment. The Court observed: "The official conduct which is the predicate of this appeal profoundly shocks the judicial conscience. It was a brazenly lawless attempt to seek a conviction at the expense of fundamental individual rights." *Id.* at 26, 417 *A.*2d 474. Nevertheless, the Court permitted the prosecution to proceed. The Court's decision not to bar further prosecution was based, in part, upon the fact that the incidents appeared to be isolated, and consequently, posed no threat to judicial integrity. *Ibid.* The Court indicated it would not hesitate in the future to bar any prosecution founded on an intrusion into the attorney-client relationship on grounds of fundamental fairness.

We recognize that the Court in *Sugar* was influenced to a great extent by the fact that the outrageous conduct was an apparently isolated instance and observed that any future similar instances would raise grave questions of judicial complicity if anything less than the most severe sanction of dismissal were applied. This is not the first case out of Cumberland County where the existence of a confidential informant was withheld from all reports. Just last year we reversed a conviction and remanded for a new trial holding that, when a person who may be a confidential informant is involved in an illicit transaction, that participation must be reported without identifying the individual, giving the parties in an ensuing criminal prosecution a fair opportunity to seek judicial

evaluation of the facts and the policies concerning the qualified privilege set forth in *N.J.R.E.* 516 not to disclose the identity of a confidential informant. *State v. Cooper*, 301 *N.J.Super.* 298, 305–06, 693 *A.*2d 1267 (App.Div.1997). However, in this case, the withholding of the existence of the informant took place before *Cooper, supra*, was decided. Unlike *Sugar*, this does not appear to have been an isolated incident in Cumberland County. However, as in *Cooper*, the trial prosecutor was unaware of the existence of the confidential informant.

■ In addition, the conduct complained of here does not approach the level of egregiousness in *Sugar*. The law enforcement officers appeared to be motivated by their desire to protect the confidential informant from reprisal by defendant. They had some concern that if the existence of the confidential informant were noted in the reports, which were ultimately turned over by way of discovery, defendant would be able to ascertain the identity of the confidential informant. Although that was not their decision to make, the drastic remedy of dismissal of the indictment is not warranted. However, we strongly disapprove of the practice of withholding the existence of a confidential informant from an investigative report. This practice must cease immediately. We direct the county prosecutor to notify all Cumberland County police departments that the existence of a confidential informant must be contained in the investigative report. Withholding the existence of a confidential informant is not a decision for the police to make. It is a decision for the judge to make, if and when an application for a protective order is made pursuant to *R.* 3:13–3(f) 1 to –2. In the future, under circumstances similar to those present in this case, we will not hesitate to bar reprosecution if law enforcement officers fail to disclose in their report the existence of a confidential informant.

■ Here, in not ordering dismissal of the indictment, we believe we have struck the appropriate balance between the interests of society in having a person charged with commission of a crime tried and punished, if found guilty, and the right of a

defendant to be prosecuted fairly. *State v. Farmer,* 48 *N.J.* 145, 175, 224 *A.*2d 481 (1966), *cert. denied, Farmer v. New Jersey, sub nom.,* 386 *U.S.* 991, 87 *S.Ct.* 1305, 18 *L.Ed.*2d 335 (1967). If an accommodation of society's rights and a defendant's rights result in an inability to provide defendant with a fair trial, society's rights must yield. However, defendant's right to a fair trial was not compromised in any way by permitting the retrial. Defendant, in fact, presented the testimony of the confidential informant at retrial, who also testified at the first trial, and had adequate opportunity before retrial to investigate. The decision of the trial court in ordering a retrial fairly served the interests of society in having one charged with the commission of a crime tried to a conclusion and at the same time did not in any way compromise defendant's right to a fair trial. There was no mistaken exercise of discretion in refusing to dismiss the indictment.

In Point VIII defendant contends the trial court erred in failing to merge count one, possession of CDS, into count two, possession of CDS with the intent to distribute. The State correctly concedes the counts should have been merged. *State v. Rechtschaffer, supra,* 70 *N.J* at 411, 360 *A.*2d 362; *State v. Selvaggio,* 206 *N.J.Super.* 328, 330, 502 *A.*2d 1142 (App.Div.1985). Accordingly, we remand to the trial court for the entry of an amended Judgment of Conviction merging count one into count two and vacating all penalties imposed on count one.

After review of the record, the applicable law, and the briefs filed, we conclude that the remaining issues raised by defendant are without merit. *See R.* 2:11–3(e)(2).

Affirmed.

KESTIN, J.A.D., concurring.

With the court's strong disapproval of the police practice of withholding the existence of a confidential informant from investigative reports, and the court's emphatic warning concerning such conduct in the future, I concur with my colleagues' reasoning. See *State v. Cooper,* 301 *N.J.Super.* 298, 693 *A.*2d 1267 (App.Div.

1997), decided only a year ago, before the events in this case occurred.

I write separately to emphasize that, in fundamental fairness terms relative to whether re-prosecution should be barred, there is little difference between police misfeasance that has deprived a defendant of a fair trial and prosecutorial misconduct that has had the same result. *See State v. Sugar*, 84 *N.J.* 1, 14–15, 417 *A.*2d 474 (1980); *State v. Carter*, 69 *N.J.* 420, 429, 354 *A.*2d 627 (1976); *State v. Jones*, 308 *N.J.Super.* 15, 42, 705 *A.*2d 373 (App.Div.1998).