**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1140-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

WILLIAM ZAMOR,

     Defendant-Appellant.

_____

Submitted November 14, 2018 – Decided March 18, 2019

Before Judges Yannotti and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 14-07-0799.

Joseph E. Krakora, Public Defender, attorney for appellant (Elizabeth C. Jarit, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Arielle E. Katz, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant William Zamor pled guilty to various offenses arising from his possession of controlled dangerous substances (CDS) and to two motor vehicle violations after he unsuccessfully challenged at a suppression hearing the seizure of evidence obtained from his motor vehicle. The sentencing judge imposed a five-year term in Drug Court[1] and indicated that if defendant violated its conditions, he could be sentenced to an aggregate term of up to ten years. Defendant's driving privileges were suspended for two years and one day, and fines and penalties were imposed.

Defendant now appeals from his conviction and sentence, contending that his counsel was impermissibly barred from cross-examining the arresting officer at the suppression hearing about employing racial profiling when he ran defendant's license plate, which led to the officer stopping defendant's vehicle. He also argues that the sentencing judge failed to recognize that he had discretion to not suspend defendant's license after finding that a suspension would be a hardship and failed to properly merge various counts of his final charges, exposing him to an excessive number of convictions and duplicate fines and penalties. For the reasons that follow,

---

[1] "Drug Courts are specialized courts within the Superior Court that target drug-involved 'offenders who are most likely to benefit from treatment and do not pose a risk to public safety.'" State v. Meyer, 192 N.J. 421, 428 (2007); see also State v. Maurer, 438 N.J. Super. 402, 408 (App. Div. 2014).

A-1140-17T1

we affirm defendant's conviction and his license suspension, but remand for correction of his sentence.

The facts surrounding defendant's arrest as developed at the suppression hearing are summarized as follows. On March 10, 2014, East Brunswick Police Officer Joseph Bauer observed a vehicle on Route 18 being operated "at a high rate of speed." Bauer noted the vehicle's license plate number and ran it through his mobile data terminal (MDT). Information obtained from the MDT indicated that the vehicle was registered to defendant and that his license had been suspended. The MDT also provided Bauer with a photograph of defendant.

Using the information from the MDT, Bauer drove alongside defendant's car and verified that defendant was driving the vehicle. Bauer initiated a motor vehicle stop and after pulling him over without incident, defendant provided Bauer with his driving credentials, which the officer used to verify that defendant's license had been suspended.

When Bauer confronted defendant about the suspension, defendant stated that he thought he had addressed the problem. The suspension occurred when defendant failed to appear in municipal court and, as he later learned, his license suspension was a mistake. Defendant stated that he later appeared, paid a fine, and believed that had resolved the issue. Additional information supplied to Bauer by dispatch

A-1140-17T1

revealed that there were three open arrest warrants for defendant based upon his failure to appear in multiple municipal courts for various traffic tickets.

Bauer had defendant park his vehicle in a gas station's lot, advised him he was not allowed to drive, and asked defendant to have someone retrieve his vehicle. Bauer also told defendant that he was placing him under arrest because of the open warrants, removed defendant from his vehicle for a pat down, and waited for backup to arrive to transport defendant to headquarters.

Defendant called his wife to advise her of the situation and asked her to come to retrieve his car. When defendant told the officer that his wife would be there shortly, Bauer said they could not wait for her and directed him to tell his wife to meet them at the police station where she could obtain the keys to defendant's car. Defendant complied and asked Bauer to close the sunroof in his vehicle.

Another police officer, Mark Morris, arrived at the scene and at defendant's request, entered defendant's vehicle to remove a woman's purse from the backseat of the car. The officer retrieved the purse, secured defendant in the backseat of his police vehicle, and left to transport him to police headquarters.

After Morris and defendant left the scene, Bauer, for the first time, went into defendant's car to close the sunroof. At that point, he smelled marijuana and saw

A-1140-17T1

dryer sheets and a package of cigar wrappers. He then communicated with Morris and asked that he bring defendant back to the scene.

Upon defendant's return, Bauer advised him about smelling marijuana in his car. Defendant denied smoking marijuana and said he only smoked cigarettes, which he had been doing at the time of the stop. Bauer asked for defendant's consent to search the vehicle, but defendant refused. The officer told defendant that because he refused to give consent, he would be calling for a canine search of the vehicle, and again asked for consent, which defendant again refused. Bauer called for the canine officer to meet him at the scene.

An officer and his dog arrived within twenty minutes, and the dog indicated the presence of CDS outside both sides of defendant's car. Bauer again asked for consent to search and defendant again refused. Bauer had the car impounded and obtained telephonically a search warrant. The ensuing search disclosed forty-two Ziploc bags of cocaine, burnt marijuana "roaches," cigars, approximately $1,491 in cash, rolling papers, and fifty bags of heroin.

Defendant was charged in an indictment with third-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); third-degree possession of cocaine, N.J.S.A. 2C:35-

10(a)(1); and third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1).  He was also charged with the disorderly persons offense of possession of drug paraphernalia, N.J.S.A. 2C:36-2, as well as the motor vehicle violations of operation of a motor vehicle while in possession of CDS, N.J.S.A. 39:4-49.1, and driving with a suspended license, N.J.S.A. 39:3-40.

Defendant filed a motion to suppress and the motion judge conducted an evidentiary hearing on June 8, 2015.  At the hearing, Bauer and Morris testified for the State.  Defendant and his wife testified for defendant.  The officers testified about the circumstances leading to defendant's arrest and indictment as discussed above.  In addition, Bauer's motor vehicle recording (MVR) of the incident was played for the court.  The recording depicted the general traffic conditions, including defendant's vehicle, just before the stop by Bauer.  Bauer testified that the other vehicles shown in the MVR were passing defendant's vehicle.  He also confirmed that, although defendant was driving at a high rate of speed, he did not use a radar detector and did not cite defendant for speeding.  In addition, as to his entry into defendant's vehicle, Bauer confirmed that he did not record that event as he turned off the MVR when defendant was initially transported from the scene and did not turn it on again until defendant was brought back.  Bauer also confirmed that none of the suspected marijuana recovered from the car was sent for analysis to the lab

A-1140-17T1

and he never charged defendant with any marijuana related offenses. When Morris testified, he did not indicate that he smelled marijuana when he went into defendant's car to retrieve the purse.

During defense counsel's cross-examination of Bauer, the State objected to Bauer being questioned about his use of the MDT to screen other drivers during the day prior to stopping defendant. The motion judge sustained the objection because there had been no showing that Bauer's use of the MDT to obtain information about defendant was based on anything other than his observation of defendant's vehicle travelling at a high rate of speed.

Defendant's wife testified and explained that before being stopped by Bauer, defendant had driven his family to his in-laws' home. She also testified that she had been inside defendant's vehicle just prior to the motor vehicle stop and that there was no marijuana in the car and she did not detect any odor of marijuana while in the vehicle. Defendant testified and denied that he was speeding, which he could not have done because of the volume of traffic, described his interaction with Bauer, and stated that he was smoking cigarettes, which was the only type of items in the ashtray, before he was stopped by Bauer.

At the conclusion of the hearing, the motion judge denied defendant's application, placing his reasons on the record in a comprehensive oral decision. At

the outset, the judge addressed defendant's contention that his stop was the result of impermissible racial profiling. The judge observed that there was no evidence of profiling in the form of records of police MDT checks in the area for any given time period, which defendant could have subpoenaed if he wanted to pursue that claim. He also found there was no evidence that the claim that defendant was speeding was a "pretext" as the officer was fully capable of determining whether a vehicle was speeding without using radar at any point, even before the MVR was activated. The judge then found that Bauer properly relied on defendant's license plate number to conduct the MDT check and correctly used that information to stop defendant's motor vehicle after receiving information that his license was suspended and that it was defendant who was driving the vehicle.

The motion judge also found that the MVR depicted the conversation between Bauer and defendant about the sunroof. He found that after defendant was removed by Morris, Bauer entered defendant's vehicle for that purpose. At that point, he first detected the odor of marijuana, which led to defendant's return to the scene and the eventual exterior search of the vehicle by the canine squad, and then the interior search pursuant to the warrant. The judge made note of the fact that at no time before going to close the sunroof did Bauer go inside the car to conduct any type of search.

A-1140-17T1

The motion judge then addressed the legal issue presented, which he defined as whether Bauer's stop of defendant's vehicle using his license plate and the information he received from the MDT violated defendant's Fourth Amendment rights. Citing to State v. Myrick, 282 N.J. Super. 285, 289 (Law Div. 1995), the judge observed that even a random check of a license plate using an MDT is not an impermissible invasion of an individual's privacy because "there's no expectation of privacy in your license plate." Moreover, the judge found that Bauer's stop of defendant only occurred after the MDT check, which "created an articulable suspicion that defendant was violating a motor vehicle law, in this case driving while suspended."

The judge next addressed whether "Bauer had legal justification to order defendant to exit the vehicle," and, citing to Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977), State v. Smith, 134 N.J. 599, 609 (1994), and State v. Legette, 247 N.J. Super. 278, 279-80 (Law Div. 1994), he concluded that in order to protect the officer's safety, removing defendant from the car was proper. He also concluded that in light of defendant's driving while suspended and the outstanding warrants for his arrest, Bauer was not only justified, but obligated to arrest defendant at the scene.

The judge also made specific credibility findings about Bauer, and found he was credible. He cited to State v. Judge, 275 N.J. Super. 194 (App. Div. 1994), and

9

concluded that once Bauer smelled marijuana in the car, he acted properly by having defendant return to the scene and asking for his consent to search the vehicle, and after not receiving it, having the canine squad search the outside of the car. Once there was a positive indication, Bauer correctly sought and obtained a search warrant. The judge concluded "that everything . . . was entirely proper" and denied the motion.

Defendant filed a motion for reconsideration, which the judge denied. In a written decision that accompanied his order, the judge rejected defendant's contention that reconsideration was warranted because Bauer's testimony did not make sense as there was a delay between the time Bauer allegedly detected marijuana in the car and had Morris bring defendant back. He also rejected defendant's argument that the judge erred by sustaining the State's objection to defense counsel "asking any questions aimed at assessing whether the police off[ic]er's use of the MDT was indeed random or based upon impermissible motives." The motion judge reiterated his finding that Bauer was a credible witness and that even if there was a "time lapse," it was not a basis to reconsider that finding. As to his sustaining the State's objection to questions about Bauer's earlier use of the MDT, the judge found unpersuasive defendant's supporting contention that because Bauer did not issue defendant a speeding ticket and the MVR did not demonstrate

defendant was speeding, the prohibited inquiry into Bauer's motivation for using the MDT was warranted. The judge found that the two contentions could not support reconsideration as they could have been addressed at the hearing and, in any event, "[h]ad the objection been overruled, there is not a significant showing that this would have greatly affected the outcome of the suppression hearing." Finally, the judge found defendant's contention that he was entitled to a rehearing to address and correct his failure to come forward with a "subpoenaed . . . sampling of MDT records" and to give him an opportunity to raise the issue of Bauer's earlier use of the MDT, was "not consistent with the grounds stated in R[ule] 4:49-2 in which to grant a motion for reconsideration because such additional information could have been provided in the prior hearing."

Defendant entered an open plea to all of the charges before a different judge, preserving his right to appeal the denial of his suppression motion. On September 21, 2017, another judge sentenced defendant to Drug Court and imposed fines, mandatory fees, and penalties, but reserved decision regarding the imposition of a license suspension. In sentencing defendant, the judge placed on the record the "alternative" sentence defendant would receive if he was terminated from Drug Court. He stated that as to count one, the sentence would be between five years with a twenty-month period of parole ineligibility and ten years with a five-year period

11

of parole ineligibility.  He explained that count two would merge with count one, and on count three, the sentence would be between three years and five years, concurrent to count one.  Finally, count four would merge with count three.  Turning to the disorderly person offense, the judge stated that defendant would receive a term of up to six months.

A week later, the judge suspended defendant's license for two years for operating a vehicle while in possession of CDS, and imposed an additional one-day suspension for driving with a suspended license.  The judge stated his reason in a written decision, where he began by observing that several of the offenses to which defendant pled guilty carried with them license suspensions for different lengths of time.  He found that the "unique" question raised by defendant's plea was "[s]ince the Title 2C drug charges and the possession-in-a-motor-vehicle charge merge, does the required license suspension in the latter survive?"  The judge considered our opinion in State v. Baumann, 340 N.J. Super. 553 (App. Div. 2001) and concluded that in defendant's case, "the question is not as straightforward, because the more serious offenses . . . provide for a license suspension but allow a judge to grant an exception in compelling circumstances.  Thus, depending upon whether a hardship exists, the more serious charges may—or may not—carry a license suspension," but

12

the lesser charge here carried a mandatory period of suspension. Relying on the reasoning in <u>Baumann</u>, the judge concluded as follows:

> If the court orders a license suspension under N.J.S.A. 2C:35-16a, the suspension required by the lesser charge will not survive after the merger. This is true, because the defendant would be penalized twice for the same conduct. Logically, then, the opposite would also be true: If the court granted an exception and chose to forego a suspension, the penalties of the lesser offense (namely, the Title 39 charges) would survive, as the more serious Title 2C charges would not carry those penalties.

The judge found further support for his conclusion in the legislative history of the two statutes. He noted that the Legislature "amended N.J.S.A. 2(c):35-16a to allow a hardship exception to the license-suspension requirement," but did not amend N.J.S.A. 39:4-49.1, "suggest[ing] that the Legislature made a conscious choice to require a mandatory license loss for those who possess drugs while operating a motor vehicle, while allowing a hardship exception for those who violate drug laws when the offense is unrelated to operating a motor vehicle."

According to the judge, the purpose for the difference was based upon the danger caused by a driver who possesses drugs as compared to a defendant whose crime is unrelated to his operation of a vehicle. For that reason, "[t]he Title 2C suspensions are punitive, while N.J.S.A. 39:4-49.1 suspensions are protective." As a result, when a sentencing court is confronted with the merger of the two offenses,

"a court must first decide whether to grant a hardship exception under N.J.S.A. 2C:35-16a. Whether the suspension required by N.J.S.A. 39:4-49.1 survives depends on this decision."

The judge then considered defendant's circumstances and concluded that a hardship exception to the Title 2C suspension was "appropriate." However, under Baumann, "the penalties for the lesser offense survive the merger. Thus, he is subject to a two-year license suspension under N.J.S.A. 39:4-49.1," as well as a consecutive one-day suspension under N.J.S.A. 3-40. The judge stayed the suspension pending appeal.

The sentencing judge entered defendant's Judgment of Conviction on October 19, 2017. The judgment reflected the merger of the offenses as described by the judge at sentencing, but there was no mention of the merger of either motor vehicle violation as discussed in the judge's written decision addressing the license suspension. This appeal followed.

On appeal, defendant specifically argues the following:

POINT I

[DEFENDANT] WAS DENIED DUE PROCESS WHEN THE TRIAL COURT PREVENTED HIM FROM CROSS-EXAMINING THE STATE'S MAIN WITNESS ABOUT THE OFFICER'S USE OF THE MDT TO CHECK LICENSE PLATES OF PASSING MOTORISTS.

14

POINT II

THE COURT ERRED IN DETERMINING THAT IT LACKED THE DISCRETION AS TO WHETHER TO IMPOSE A LICENSE SUSPENSION FOR N.J.S.A. 39:4-49.1.

POINT III

A REMAND IS REQUIRED TO CORRECT THE JUDGMENT OF CONVICTION RELATING TO MERGER AND MONETARY PENALTIES.

We begin our review by considering defendant's challenge to the outcome of the suppression hearing. The gist of defendant's argument is that since he was not speeding and Bauer could plainly see defendant was an African American man wearing dreadlocks, he was stopped as result of racial profiling. He argues that during the hearing, the motion judge improperly sustained the prosecutor's objection to defense counsel asking if Bauer had "run any other MDT checks on any other drivers between 2:30 and 3:30" prior to stopping defendant. The judge barred the inquiry after he found that there was no evidence that Bauer engaged in any "illicit profiling."

According to defendant, counsel's question was "relevant to determin[ing] whether the officer was checking people based on . . . invidious reason[s], such as the driver's race." Defendant concedes that "the police are permitted to conduct

MDT computer checks of cars passing by, [but] they may not base their decision to run such checks on the race of the driver or some other invidious reason." We agree with that premise, but find no support for its application to the facts in this case.

Our "review of a motion judge's factual findings in a suppression hearing is highly deferential." State v. Gonzales, 227 N.J. 77, 101 (2016). In our review, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014); see also State v. Evans, 235 N.J. 125, 133 (2018). We defer "'to those findings of the trial judge which are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Similarly, a judge's evidentiary rulings at a suppression hearing are subject to an abuse of discretion standard. State v. Nantambu, 221 N.J. 390, 402 (2015). We owe no deference, however, to the trial court's legal conclusions or interpretation of the legal consequences that flow from established facts. Thus, our review in that regard is de novo. State v. Watts, 223 N.J. 503, 516 (2015).

Applying our highly discretionary standard of review, we conclude that there is insufficient merit to defendant's argument that the motion judge erred by

interfering with defendant's attempt to establish Bauer ran "the MDT check" "because [defendant] was black" to warrant discussion in a written opinion, R. 2:11-3(e)(2), and we affirm substantially for the reason expressed by the motion judge. We add the following brief comments.

"[I]f race is the sole motivation underlying the use of an MDT, it is illegal and the evidence resulting from a subsequent stop must be suppressed." State v. Segars, 172 N.J. 481, 493 (2002). Successful claims of selective enforcement are almost always supported by police records, which demonstrate a policy or pattern of discriminatory enforcement in a particular geographic area. State v. Halsey, 340 N.J. Super. 492, 501 (App. Div. 2001). However, in order to obtain discovery of such records, a defendant must first demonstrate "a colorable basis for a claim of selective enforcement." Ibid. (quoting State v. Kennedy, 247 N.J. Super. 21, 25 (App. Div. 1991)).

Here, we conclude from our review that defendant never established a colorable claim of racial profiling. Not only did the motion judge correctly determine there was nothing in the evidence to support defendant's contention, there was also an absence of any proof that Bauer knew or observed that defendant was African American prior to running the MDT check and obtaining information about defendant from his license plate.

17

Moreover, unlike the situation in State v. Maryland, 167 N.J. 471 (2001), a case relied upon by defendant, there were no statements made by Bauer about why he ran the MDT search that contradicted any other version of the events contained in any reports, which could support a conclusion that Bauer took action because defendant is a black male. Id. at 485 (holding that "[t]he objective reasonableness standard for deciding the constitutionality of a search . . . is not satisfied when the only reason for the [stop or] search is the individual's race"). Unlike Maryland, there was no "inference of selective law enforcement . . . raised . . . [by] disparate and inconsistent versions of defendant's encounter with the police, [which would have required] the State . . . to have established a non-discriminatory basis for the officer[] to conduct [the MDT] inquiry." Id. at 486. We have no reason to disturb the judge's decision here.

Turning to defendant's contentions about his sentence and license suspension, we first address defendant's argument that the sentencing judge "incorrectly believed that the motor vehicle suspension survived despite the fact that it would have been subsumed into the criminal conviction suspension." According to defendant, the judge "had discretion about whether [he] could impose the motor vehicle license suspension." Defendant argues that Baumann is distinguishable from his case because that case "held that the six-month license suspension required under

N.J.S.A. 39:4-50 survived merger with a third-degree aggravated assault conviction[,]" which did not carry with it a requirement for a license suspension. According to defendant, his case is different because "the two merged offenses in this case both contain the penalty of a two-year license[] suspension." We disagree.

We conclude there is no merit to defendant's contention that once the sentencing judge determined he was entitled to a hardship exception under Title 2C criminal offense, a license suspension could not be imposed as required for defendant's Title 39 violations. We therefore affirm his license suspension substantially for the reason expressed by the sentencing judge in his written decision. We add the following comments.

In State v. Frank, 445 N.J. Super. 98 (App. Div. 2016), we considered Baumann and explained the viability of mandatory penalties under Title 39 where a defendant had also been convicted of Title 2C offenses that carry discretionary license suspensions. In that case, the defendant was convicted of both leaving the scene of an accident involving bodily injury, N.J.S.A. 2C:12-1.1, which was subject to a discretionary license suspension under N.J.S.A. 2C: 43-2(c), and of the motor vehicle violation for leaving the scene of an accident, N.J.S.A. 39:4-129, that provides for a mandatory license forfeiture for six months. We held, as we did in Baumann, that the "[m]andatory penalties attached to a merged violation survive

19

merger, even if the elements of the merged violation are completely encompassed in the surviving violation." Id. at 109. We explained that as we stated in Baumann, motor vehicle violation "penalties 'represent not only punishment for the offender but also protection for the driving public.'" Ibid. (quoting Baumann, 340 N.J. Super. at 557). We concluded that Baumann's logic applied equally to where both the Title 2C offense and the Title 39 violation carried similar penalties. We stated:

> N.J.S.A. 39:4-129(a) mandates a one-year license suspension for a first-time offender and a permanent loss of license for a subsequent offense. By contrast, for the Code offense, a court may, but is not mandated to, impose a license suspension of up to two years if a motor vehicle is used in the course of the offense. N.J.S.A. 2C:43-2(c). We conclude that the Legislature intended that these penalties, mandated by N.J.S.A. 39:4-129(a), would survive merger.
>
> [Id. at 110.]

Applying both Baumann's and Frank's holdings here, we have no reason to vacate the suspension of defendant's license as the sentencing judge correctly determined that the suspensions he imposed survived merger and were mandatory.

Finally, we turn our attention to defendant's claim that the sentencing judge failed to properly merge his convictions before sentencing. We initially observe that the State agrees with defendant that the sentencing judge erred in his merger of offenses and that he failed to merge the motor vehicle violation and, therefore,

20

improperly calculated the associated financial assessments. We agree with the parties.

Here, the judge should have merged count three, charging third-degree possession of cocaine, with count one, the possession with intent to distribute cocaine charge, and count four, charging possession of heroin, should have merged with count two, the possession with intent to distribute heroin charge. Also, the N.J.S.A. 39:4-49.1 violation should have been merged with the CDS possession offenses. Once properly merged, a sentencing court cannot impose financial assessments and penalties on merged convictions. State v. Eckert, 410 N.J. Super. 389, 406 (App. Div. 2009). Under these circumstances, we are constrained to remand the matter for correction of the judgment of conviction, which should also be amended to reflect any necessary changes to the fines or penalties imposed to avoid defendant being assessed for any merged offenses under Title 2C. See State v. Wright, 312 N.J. Super. 442, 455 (App. Div. 1998).

Affirmed in part, remanded in part for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1140-17T1