282 N.J. Super. 285 (1995)
659 A.2d 976
STATE OF NEW JERSEY, PLAINTIFFS,
v.
LAWRENCE MYRICK AND LASHON GREEN, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided February 14, 1995.
*287 Young Ki Shim, Assistant Prosecutor of Union County, for plaintiff.
William D. Feingold, Attorney for defendant, Lawrence Myrick.
Douglas Kabak, Assistant Public Defender for defendant, Lashon Green.
SPATOLA, J.S.C.
The threshold issue in this case is the constitutionality of a law enforcement officer's random computer check of a motor vehicle's registration. In this drug possession case, the two co-defendants had filed a motion to suppress the evidence obtained after their motor vehicle was stopped based on the results of such an initial registration check. The defendants claim this stop was unlawful *288 and violated their state and federal constitutional rights.[1] This court denied the motion and, thereafter, the two co-defendants pled guilty to various drug-related charges. This is an amplification of this court's opinion on this novel issue.
The facts in this case are as follows: On April 28, 1994, at 9:42 PM, police officer Russell Yeager was on duty alone in uniform and in a marked unit in the vicinity of North and Morse Avenues in Fanwood. He was driving eastbound on North Avenue behind a Ford Escort when he ran a random computer "registration check" on the car ahead of him. He testified that the motor vehicle's license plate came back as being registered to a Ford *289 Tempo, not to an Escort. He ran this check again and then executed a motor vehicle stop once he had gotten the same report that the license plate did not match the car.
Officer Yeager exited his car and, as he approached the driver's side of the Escort, he saw the front seat passenger, later identified as co-defendant, Lawrence Myrick, reach behind the driver's seat. He described the person's movements as "furtive," "sudden," and "quick."
Officer Yeager asked for the female driver's credentials and although a license in the name of Nicole L. Frazier was produced, no proof of insurance nor registration was produced. The driver was later identified as co-defendant, Lashon Green, not Nicole L. Frazier. The officer ordered the driver to step out of the car and took her to the rear of the motor vehicle.[2]
Meanwhile, Officer Yeager observed that the passenger was moving around in the vehicle and was looking around at him. Yeager testified that, at this point, he became concerned for his own safety. He further testified that since the driver was wearing tight pants, he could see she was not secreting a weapon on her, but he had not been able to see what the passenger may have put behind the driver's seat. Because of this and Myrick's sudden jerky motions and furtive gestures as he had approached the motor vehicle, officer Yeager ordered him to exit the car.
Officer Yeager testified that as Myrick exited the motor vehicle, he "bladed" his body,[3] but was observed placing a white object in *290 his front left shirt pocket. Yeager first asked Myrick what he placed behind the passenger seat. Myrick replied "nothing." Officer Yeager then read Myrick his Miranda rights and asked him what he had just placed in his pocket. Myrick then replied "I didn't put nothing in my pocket."
Officer Yeager was, however, able to see into Myrick's pocket and observed what appeared to be a controlled dangerous substance, based on his formal and on-the-job training in six years as a police officer in Newark and Fanwood, New Jersey. The items were retrieved and proved to be a white paper towel containing 18 glassine envelopes of suspected heroin.
Once back at police headquarters, another registration check was performed and this time the vehicle identification number of this Ford Escort did come back as registered to this license plate.
In its suppression motion, the defense argued that the CDS found on Myrick's person should be considered "fruits of the poisonous tree," pursuant to Wong Sun v. United States, 371 U.S. 471, 485-86, 83 S.Ct. 407, 416-417, 9 L.Ed.2d 441 (1963), because the initial motor vehicle stop was improper and, therefore, violative of the co-defendants' constitutional rights under the Fourth Amendment to the United States Constitution and Article I, paragraph 7, of the New Jersey Constitution. The defense contended that the sole basis for this stop was the random computer check conducted by the officer. The defense contended that the police officer had no probable cause to perform such a computer check and noted the absence of any evidence that the vehicle in question was violating any motor vehicle law, either by its condition or mode of operation.
The State countered that this particular motor vehicle stop was proper because the police officer had an articulable and reasonable suspicion that the motor vehicle was in violation of the motor vehicle laws of the State by having the wrong license plates. *291 Delaware v. Prouse, 440 U.S. at 663, 99 S.Ct. at 1401[4]; see also State v. Murphy, 238 N.J. Super. 546, 553, 570 A.2d 451 (App.Div. 1990) (cataloguing federal and New Jersey cases upholding stops based on motor vehicle violations).
The issue of whether a random computer check of a motor vehicle's registration is a violation of an individual's constitutional rights under the Fourth Amendment to the United States Constitution[5] or Article I, paragraph 7, of the New Jersey Constitution[6], is one of first impression in New Jersey.
Underlying Article I, paragraph 7, of the New Jersey Constitution is the premise that there is a zone of privacy wherein all individuals expect that what they say or do will be protected *292 from unreasonable government intrusion. New Jersey requires that this expectation of privacy be reasonable. State v. Hempele, supra, 120 N.J. at 200, 576 A.2d 793.[7]
A search has been defined by our courts as "an invasion, a quest with some sort of force, either actual or constructive", State v. Roman, 182 N.J. Super. 297, 299, 440 A.2d 1155 (App.Div. 1982), certif. denied, 89 N.J. 431, 446 A.2d 156 (1982), or "an exploratory investigation and prying into hidden places for that which is concealed." State v. Anglada, 144 N.J. Super. 358, 361, 365 A.2d 720 (App.Div. 1976).[8] However, Article I, paragraph 7, of the New Jersey Constitution and the Fourth Amendment to the United States Constitution provide "no protection for what a person knowingly exposes to the public...." State v. Bates, 202 N.J. Super. 416, 427, 495 A.2d 422 (App.Div. 1985).[9]
Here the visual inspection of defendant's motor vehicle license plate and the ensuing computer check, did not constitute a search and seizure subject to constitutional protection. For this visual inspection to have constituted a "search," a defendant must have had a reasonable expectation of privacy in the area searched. This court is convinced that the defendant's expectation of privacy *293 in the license plate was minimal because license plates mounted on the front and rear of a motor vehicle are constantly exposed to public view. Bates, 202 N.J. Super. at 426-27, 495 A.2d 422 (there was no reasonable expectation of privacy in the soles of the defendant's shoes); State v. Foy, 146 N.J. Super. 378, 386, 369 A.2d 995 (Law Div. 1976) (there was no reasonable expectation of privacy in the facial features of the defendant, and thus, an identification line-up was not a search); see also United States v. Walraven, 892 F.2d 972, 974 (10th Cir.1989) ("[B]ecause they are in plain view, no privacy interest exists in license plates.").
If this visual inspection of the license plates is not considered an event protected by the federal or state constitution, the subsequent registration check of the plate should not be considered a search either. The computer check did not intrude on the legitimate privacy interests of either the defendant's person or the motor vehicle she was operating. This court believes that the flaw in the defense counsel's argument is that it treats a routine registration check on a computer as a Fourth Amendment event. In order for this to be the case, there would have to be some privacy interest that society deems worthy of protection. As discussed, however, license plates are publicly displayed on the front and back of motor vehicles in this State. They are there for all the world to see, including the world of law enforcement. There are legitimate safety concerns revolving around the use of cars as modes of transport and, thus license plates afford the public in general with the means of identification, for example, after an accident.
Here, Officer Yeager did not initiate the vehicle stop until the computer check created an articulable suspicion that the defendants were violating a motor vehicle law. Therefore, the motor vehicle stop in this case was proper.[10]
*294 Since this is a case of first impression in New Jersey, this court has researched caselaw in other jurisdictions. In State v. Willis, 1992 WL 324301, [*]1 (Ohio App. 2 Dist. 1992),[11] the Ohio Court of Appeals held:
We view the sole issue in this case to be whether the random check of the defendant's license plate prior to the investigative stop violated the Fourth Amendment prohibition "against unreasonable searches and seizures."
Ordinarily a seizure involves the physical taking of physical property. We think it is reasonably clear that no seizure is involved in the check of a license plate number.
It follows that the issue is further narrowed to whether the check of the license plate was an unreasonable search.
It was stipulated that the arresting officer observed the license plate while the defendant's motor vehicle was on a public street.
Under these circumstances the defendant had no expectation of privacy in his license numbers, State v. Ronald Fike (1984), 1984 WL 5021 unreported....
In our view neither a search nor a seizure was involved in the license check in this case. State v. Owens, 75 Ohio App.3d 523, 599 N.E.2d 859.
In another Ohio case citing Willis, State v. Stamper, 1993 WL 32029, [*]1 (Ohio App. 2 Dist. 1993), the appellate court held that
[i]t was constitutionally permissible for Patrolman Rhea to check the license plate number that he observed on the vehicle operated by Stamper. In other words, Patrolman Rhea was not required to have a reasonable and articulable suspicion of criminal activity to simply check the license plate number on the vehicle operated by Stamper. Random traffic stops involve an intrusion for which there must be some justification. A random check of a license plate number involves no intrusion, and thus requires no justification.
In State v. Bates, 1987 WL 15817, [*]1 (Ohio App. 1987), the court of appeals reversed the trial court's grant of a suppression motion and held that
[o]ne does not have any expectation of privacy in a license plate number which is required to be openly displayed on his vehicle.
Moreover, a scan of a computer data bank, in order to obtain information relevant to the license number, involves no intrusion. Such a "search" does not interrupt a driver in his travel, nor restrain his person or detain him. In sum, it does not *295 constitute a "stop" under Terry v. Ohio, 392 U.S. 1 [, 88 S.Ct. 1868, 20 L.Ed.2d 889] (1968).[12]
Furthermore, the defense argues that the stop in this case was improper because the initial computer reports notifying the police officer of a discrepancy between the car's plates and the registration were erroneous. A third computer check, subsequently made at the police headquarters, did indeed correct the error and ultimately matched the plates and the vehicle. The defense argues that, even though the police officer relied upon the first two erroneous reports, there is no "good-faith" exception to the warrant requirement in New Jersey. State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987).
However, since this was not an event implicating the defendants' Fourth Amendment interests, the issue of the officer's "good-faith" is irrelevant.
Accordingly, the police officer's visual inspection and computer check of a motor vehicle's registration number were lawful. The subsequent motor vehicle stop based on the results of that computer check satisfied the constitutional requirement that an articulable and reasonable suspicion of some illegality must have preceded the stop.
The motion to suppress the evidence is denied.
NOTES
[1] It should be noted that this court is basing its decision on state constitutional grounds exclusively, not on federal constitutional grounds. State v. Kirk, 202 N.J. Super. 28, 34, 493 A.2d 1271 (App.Div. 1985). The federal cases that are cited in support of our interpretation of the New Jersey Constitution "are being used only for the purpose of guidance, and do not themselves compel the result that [this Court] has reached." State v. Bruzzese, 94 N.J. 210, 217 n. 3, 463 A.2d 320 (1983) (quoting Michigan v. Long, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983)), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984).

New Jersey courts have interpreted Article I, paragraph 7 of the New Jersey Constitution of 1947 to afford greater privacy protection and freedom from unreasonable searches and seizures than the Fourth Amendment to the United States Constitution. See State v. Hempele, 120 N.J. 182, 576 A.2d 793 (1990); State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987); State v. Hunt, 91 N.J. 338, 450 A.2d 952 (1982); State v. Alston, 88 N.J. 211, 440 A.2d 1311 (1981); State v. Johnson, 68 N.J. 349, 346 A.2d 66 (1975). The appellate court in Kirk stated:
We conclude, as have many other state courts, that our State Constitution ... is a more appropriate vehicle to resolve questions concerning the rights of our citizens to travel the highways of our state without police interdiction and the rights of the police to use reasonable methods to enforce our traffic laws than is the federal Constitution. 202 N.J. Super. at 36, 493 A.2d 1271.
In fact, the United States Supreme Court, in Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), invited the states to develop acceptable alternatives to constitutionally infirm random traffic stops:
This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion.
[Id. at 663, 99 S.Ct. at 1401.]
[2] Police officer Yeager subsequently discovered, at the scene, that the license co-defendant Green had produced had been "revoked." In addition, he found an outstanding warrant on Nicole L. Frazier, the person whose name was on the license. Co-defendant Green was thereupon arrested. At that time, she tried to proffer another license, one in her own name, but this turned out to be a boat license. A search incident to arrest was done on Green and her purse yielded narcotics paraphernalia and suspected CDS.
[3] Officer Yeager used the term "bladed" to describe Myrick's twisting his torso as he exited the car in such a way that the back of his right shoulder was facing the officer.
[4] In Delaware v. Prouse, supra, the United States Supreme Court held

that except in those situations in which there is at least "articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law," "stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile" are unreasonable under the Fourth Amendment.
Id. at 663, 99 S.Ct. at 1401.
The Prouse Court thought the essential purpose of the Fourth Amendment was to impose a standard of reasonableness upon law enforcement agents in order to safeguard the privacy and security of individuals. The Court stressed that in situations where the balance between intrusion on individual rights against the promotion of some legitimate governmental interests precluded insistence on some quantum of individualized suspicion, other safeguards are generally used to assure that reasonable privacy expectations are not subject to the whim or discretion of the official in the field. Id. at 654, 99 S.Ct. at 1396.
[5] The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, particularly describing the place to be searched, and the persons or things to be seized.
[6] The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the papers and things to be seized.
[7] Federal courts regard this issue as subject to a two-pronged test:

1) whether there is an actual, or subjective, expectation of privacy, and
2) whether that expectation is one that society will recognize as legitimate.
Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967) (Harlan, J. concurring).
[8] The United States Supreme Court, in U.S. v. Jacobsen, stated that a "search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85, 94 (1984).
[9] The Bates court cited Katz v. United States, in which the United States Supreme Court held that:

The Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.
[389 U.S. at 351, 88 S.Ct. at 511 (emphasis added).]
[10] In addition, the randomness of the computer check is not constitutionally invalid unless there was proof of a racial or class pattern to the police officer's selections. Here, there was no evidence of any such pattern.
[11] This case is not reported in the Northeastern 2d Reporter.
[12] In his dissent in Bates, Judge Cacioppo quoted the Ohio Supreme Court, from State v. Chatton, 11 Ohio St.3d 59, 463 N.E.2d 1237, cert. denied 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984):

... a policeman must have a suspicion of criminal activity before running a computer check of a driver's license.