[Nos. 45964-3-I; 46579-1-I; Division One. June 25, 2001.]
46879-1-I.

THE STATE OF WASHINGTON, *Respondent*, v. RALPH MATTHEW MARTIN, *Appellant*.
THE STATE OF WASHINGTON, *Respondent*, v. LONNIE D. MCKINNEY, *Appellant*.
THE CITY OF EVERETT, *Respondent*, v. RANDAL DALE SCHROEDER, *Petitioner*.

852

*Christopher Gibson* (of *Nielsen, Broman & Associates, P.L.L.C.*), for appellant Martin.

*Sharon J. Blackford* (of *Washington Appellate Project*), for appellant McKinney.

*Christian W. Smith* and *Jon T. Scott* (of *Association of Attorneys for the Accused*), for petitioner Schroeder.

*Norm Maleng, Prosecuting Attorney*, and *Endel R. Kolde* and *Daniel J. Clark, Deputies*, for respondent State.

*Mark T. Soine, City Attorney*, and *Scott R. Santoro, Assistant*, for respondent City of Everett.

*Pamela B. Loginsky* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

*Traci A. Sammeth* on behalf of American Civil Liberties Union of Washington, amicus curiae.

COLEMAN, J. — These three cases were linked in this court for oral argument and have been consolidated for purposes of this opinion for consideration of a shared legal issue; namely, whether under article I, section 7 of the Washington State Constitution, drivers have a reasonable expectation of privacy in their Department of Licensing (DOL) records that precludes law enforcement officers from searching those records without an individualized suspicion of the driver's involvement in criminal activity. Although it is well established that this State's constitution provides greater protection of personal privacy than the federal Constitution, we conclude that Washington drivers do not have a reasonable expectation of privacy in their

DOL records. Furthermore, the practice complained of in the cases presently before the court—i.e., the dissemination of individual licensing information to law enforcement officers—is specifically authorized by statute. For these reasons, we affirm the decisions entered below.

## FACTS

### Ralph Martin

In early June 1999, Seattle police received information from a citizen regarding drug activity in his neighborhood. He gave police an address and the license plate number of a van he suspected was involved. When Seattle Police Officer Zylak ran the license number through the DOL database, he learned that the van was registered to appellant Ralph Martin. When Officer Zylak cross-referenced the Washington Criminal Information Center (WACIC) database, he discovered that Martin had two outstanding warrants. Officer Zylak and several other officers contacted Martin at the address listed in the DOL records and placed him under arrest. When officers searched Martin in the booking process at the precinct, they discovered a small silver box containing cocaine in his pants pocket.

Before trial on the drug possession charge, Martin moved to suppress the cocaine, arguing that it was discovered as a result of an unlawful search of the DOL database. The trial court denied the motion, stating that drivers do not have a right to privacy in their "identity as the registered owner of a vehicle." The court pointed to the requirement that all vehicles must have license numbers prominently displayed and noted that "the purpose of having the number of the license plate is so that you can track who the car belongs to." Following a bench trial on stipulated facts, Martin was found guilty of possession of cocaine and sentenced to three months of electronic home detention.

### Lonnie McKinney

At 3:40 A.M. on January 19, 2000, Federal Way Police Officer Hoag was on routine patrol on Pacific Highway

South when he noticed a red Ford Explorer parked in front of an AM/PM market. Officer Hoag ran the Explorer's license plate number through the DOL database and learned that the registered owner had a suspended license in the third degree. From the physical description of the car's owner in the DOL database, Officer Hoag identified appellant Lonnie McKinney as the driver. After observing McKinney drive the Explorer out of the market's parking lot, Officer Hoag pulled him over and arrested him for driving with a suspended license. Officer Hoag placed McKinney in his patrol car and was returning to the Explorer when he noticed a woman lying down in the truck's backseat. From the woman's driver's license, Officer Hoag was able to identify her as McKinney's wife. After a computer check revealed two active "no-contact orders" prohibiting McKinney from having contact with his wife, Officer Hoag cited McKinney for violating the orders.

McKinney was charged with domestic violence felony violation of a court order on January 25, 2000. In March 2000, McKinney moved to dismiss the charges against him on the ground that the evidence relating to his alleged violation of the no-contact orders was obtained pursuant to an illegal search of his DOL records. The trial court denied McKinney's motion, reasoning that "it's not a violation of a person's right to privacy for a police officer . . . to go into a database for purposes of enforcing driving laws in this state." After a bench trial on stipulated facts, the trial court found McKinney guilty of violating the no-contact orders.

Randal Schroeder

As part of his routine patrol assignment, Everett Police Officer Fifield regularly drove through the parking lot of the south Everett Travelodge to check for stolen vehicles. Officer Fifield knew the Travelodge to be a location where car thieves often left stolen vehicles. It was Officer Fifield's practice to randomly select vehicles from the parking lot and run their license numbers through the DOL database. After learning the name of a vehicle's registered owner, Officer Fifield often ran that information through the

WACIC database to check for outstanding warrants and other criminal information.

On the evening of August 14, 1999, Officer Fifield drove through the Travelodge parking lot and ran the license numbers of a Chevy Nova and a Chevy truck that were parked next to each other. From the DOL database, Officer Fifield learned that the registered owners of the vehicles were Donna Schroeder and appellant Randal Schroeder, respectively. By entering this information into the WACIC database, Officer Fifield learned that the two parties were married and that there was an active protection order prohibiting Mr. Schroeder from having contact with his wife. Officer Fifield contacted the motel's manager and learned that Mr. Schroeder was registered at the motel and that he had checked in with a guest. After waiting for one of his fellow officers to arrive, Officer Fifield proceeded to Schroeder's room and found him there with his wife.

Schroeder was arrested and charged with violating the protection order. Schroeder moved to dismiss the charge on the ground that Officer Fifield's use of the DOL database constituted an improper search in violation of Schroeder's right to privacy. The motion was denied and after a trial on stipulated facts, Schroeder was convicted of the crime as charged. Schroeder's conviction was affirmed in an appeal to Snohomish County Superior Court. This court granted discretionary review on August 17, 2000.

## DISCUSSION

■ Each of the appellants in these cases argues that a police officer's search of the DOL database absent probable cause or reasonable suspicion of criminal activity violates the expectation of privacy guaranteed by article I, section 7 of the Washington State Constitution. That section provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision differs significantly from the parallel provision of the federal constitution:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The most notable difference between these two provisions is that unlike the federal constitution, our state constitution expressly provides protection for a citizen's "private affairs." *State v. Gunwall*, 106 Wn.2d 54, 65, 720 P.2d 808 (1986). Based on this difference, the Washington Supreme Court has held that article I, section 7 of the state constitution has broader application than does the Fourth Amendment as it "clearly recognizes an individual's right to privacy with no express limitations." *State v. Simpson*, 95 Wn.2d 170, 178, 622 P.2d 1199 (1980); *see also State v. Ladson*, 138 Wn.2d 343, 348, 979 P.2d 833 (1999).

 It being established that this state's constitution provides for broad protection of privacy rights, the question presented in these cases is whether the action complained of infringes on those rights. Our Supreme Court has defined the scope of article I, section 7's right of privacy as encompassing "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984); *see also In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 339, 945 P.2d 196 (1997). "The assessment of whether a cognizable privacy interest exists under Const. art. I, § 7 is thus not merely an inquiry into a person's subjective expectation of privacy but is rather an examination of whether the expectation is one which a citizen of this state should be entitled to hold." *City of Seattle v. McCready*, 123 Wn.2d 260, 270, 868 P.2d 134 (1994).

 In each of these cases, law enforcement action began with the officer's knowledge of the target vehicle's license number, which was openly displayed as required by

law. *See* RCW 46.16.240 (requiring that license plates "be attached conspicuously at the front and rear of each vehicle . . . in such a manner that they can be plainly seen and read at all times."). With the license number, the officer was able to access information about the vehicle's registered owner from the DOL database. Unlike vehicle license numbers, information about individual vehicle owners is not freely available to the public. RCW 46.12.380 restricts the release of such information but states specifically that the restrictions do not apply to requests for information by governmental entities. RCW 46.12.380(5). The legislative history of this section indicates that it was drafted with consideration given both to the privacy interests of vehicle owners and the practical need for law enforcement access to registration information:

> The legislature recognizes the extraordinary value of the vehicle title and registration records for law enforcement and commerce within the state. The legislature also recognizes that indiscriminate release of the vehicle owner information to be an infringement upon the rights of the owner and can subject owners to intrusions of their privacy. *The purpose of this act is to limit the release of vehicle owners' names and addresses while maintaining the availability of the vehicle records for the purposes of law enforcement and commerce.*

LAWS OF 1990, ch. 232, § 1 (emphasis added). Based on the information from the DOL database, the officers in each of these cases either stopped the appellant for driving with a suspended license (McKinney) or cross-referenced the WACIC database and discovered other information sufficient to justify further investigation (Martin and Schroeder).

At no point in any of these cases did the officers gain access to information that citizens of this state could reasonably expect to be protected from access by law enforcement. In fact, the personal information in the DOL database is generally analogous to that which could be learned about an individual by passing him or her on the street (e.g., height, weight, hair color, eye color, etc.).

Furthermore, none of the appellants was detained, restrained, or otherwise intruded upon by the officers' access to either the DOL or WACIC databases. On these bases, the cases presently before the court can be distinguished from other cases—several of which are relied upon by the appellants here—in which our Supreme Court has found violations of the article I, section 7 right to privacy.

In *State v. Young*, 123 Wn.2d 173, 867 P.2d 593 (1994), the court found that law enforcement use of thermal imaging devices to monitor heat patterns inside private residences violated the homeowners' privacy rights. The court stated that such surveillance unconstitutionally intrudes upon the subject's private affairs because it "discloses information about activities occurring within the confines of the home, and which a person is entitled to keep from disclosure absent a warrant." *Young*, 123 Wn.2d at 184.

In *City of Seattle v. Mesiani*, 110 Wn.2d 454, 755 P.2d 775 (1988), the court held that sobriety checkpoints used by police officers were violative of the detained drivers' privacy rights under the state constitution. The court specifically stated that "[s]obriety checkpoint stops are searches and seizures under article I, section 7" and thus could not be conducted without a warrant. *Mesiani*, 110 Wn.2d at 457. The court's holding was motivated in large part by its belief that "sobriety checkpoints are highly intrusive subjectively because the officer personally searches the driver for evidence of intoxication, including smelling breath, looking for open containers, and attempting to elicit evidence of lack of dexterity by asking for a license." *Mesiani*, 110 Wn.2d at 458-59.

In *Gunwall*, the court held that the police violated the appellant's privacy rights under the state constitution by obtaining her phone records without a warrant and using a monitoring device to record the numbers dialed on her telephone. In its analysis, the court borrowed from the reasoning of the Colorado Supreme Court in a similar case: " 'A telephone subscriber . . . has an actual expectation that the dialing of telephone numbers from a home telephone

will be free from governmental intrusion. . . . When a telephone call is made, it is as if two people are having a conversation in the privacy of the home or office[.]' " *Gunwall*, 106 Wn.2d at 67 (quoting *People v. Sporleder*, 666 P.2d 135, 141 (Colo. 1983)).

*Young*, *Mesiani*, and *Gunwall* each involved a substantial degree of intrusion into citizens' private affairs by law enforcement. In *Young*, the use of a thermal imaging device provided law enforcement officers with information about the private affairs of the target home's occupants, including their location in the home and their activities. In *Mesiani*, sobriety checkpoints restricted citizens' mobility by subjecting them to random, unpredicated traffic stops. In *Gunwall*, police learned about the defendant's personal contacts and associations by keeping track of the numbers she dialed on her home telephone. Each of the practices in these cases invaded the sphere of privacy citizens reasonably expect to be off-limits to law enforcement officers absent suspicion of criminal activity.

By contrast, *State v. Harlow*, 85 Wn. App. 557, 933 P.2d 1076 (1997) involved a minimally intrusive law enforcement practice similar to those complained of in the cases before this court. In *Harlow*, a police officer kept a list of local drivers with suspended licenses. The officer maintained the list by performing a weekly check of the listed drivers' license statuses. Appellant Harlow was stopped after the officer saw her driving and remembered her name from his list. In response to Harlow's argument that maintenance of the list violated article I, section 7 and the Fourth Amendment, Division Three of the Court of Appeals specifically stated that "[d]riving records kept by the department of licensing, like warrants records, are neither subjectively nor reasonably expected to be unavailable to police officers." *Harlow*, 85 Wn. App. at 564.

Courts in other jurisdictions that have considered this issue have concluded similarly. In *State v. Lewis*, 288 N.J. Super. 160, 671 A.2d 1126 (1996), the court was asked to decide whether a police officer's random computer check of

a license plate number violated the driver's constitutional rights under the Fourth Amendment or the New Jersey Constitution. In what the court acknowledged as a case of first impression, it concluded that "inasmuch as the license plates on a motor vehicle are exposed to public view, the visual inspection of the plate number and subsequent computer check of the information pertaining to those plates 'did not intrude on the legitimate privacy interests' of the owner of the vehicle or a passenger." *Lewis*, 288 N.J. Super. at 164 (quoting *State v. Myrick*, 282 N.J. Super. 285, 659 A.2d 976 (Law Div. 1995)).

In *State v. Owens*, 75 Ohio App. 3d 523, 599 N.E.2d 859 (1991), the court reviewed a trial court order suppressing evidence on the ground that it was seized pursuant to an unlawful traffic stop. The defendant was stopped after the arresting officer conducted a random search of the Bureau of Motor Vehicles' database and discovered that the defendant was driving with a suspended license. The appellate court reversed the trial court, holding that the officer's check of the database "was not an invasion of rights contemplated by the Fourth Amendment" in that "[i]t involved no intrusion and did not interrupt a driver in his travel or restrain or detain him." *Owens*, 599 N.E.2d at 860.

*People v. Barnes*, 152 Ill. App. 3d 1004, 505 N.E.2d 427, 106 Ill. Dec. 121 (1987) involved a random computer check of a vehicle's registration. The court identified the issue before it as whether the police officer "had sufficient articulable facts to justify stopping defendant's vehicle by relying on the computer information that the owner of the vehicle had a suspended license." *Barnes*, 505 N.E.2d at 427. Although the focus of the court's analysis was on whether the stop was justified, it held that "it is appropriate for a police officer to stop a vehicle and investigate the driving status of the driver based on information that the owner of the vehicle has a suspended driver's license." *Barnes*, 505 N.E.2d at 428. As these cases demonstrate, state courts in other jurisdictions have uniformly held that

drivers do not have a reasonable expectation of privacy in their licensing records.

Analysis of this issue under federal precedent yields the same result. "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by . . . law enforcement agents, in order 'to safeguard the privacy and security of individuals against arbitrary invasions . . . .' " *Delaware v. Prouse*, 440 U.S. 648, 653-54, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979) (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978)) (footnote omitted). "Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware*, 440 U.S. at 654. In *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 S. Ct. 2481, 110 L. Ed. 2d 412 (1990), the Supreme Court employed this analysis and held that sobriety checkpoints do not violate the detainees' Fourth Amendment rights. Similarly, the court upheld the constitutionality of border checkpoints to intercept illegal aliens in *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S. Ct. 3074, 49 L. Ed. 2d 1116 (1976).

The law enforcement practice complained of in the cases before this court involves no detention or restraint nor does it involve access to highly personal information. Thus, under the test set forth in *Prouse*, it is clear that the governmental interests promoted in these cases—i.e., ensuring that drivers on our roads are properly licensed, apprehending individuals with outstanding warrants, and ensuring compliance with no-contact orders—outweigh the minimal intrusion resulting from police officers' random checks of licensing records. The records checks did not infringe on the appellants' Fourth Amendment rights.

Appellants and amicus ACLU astutely point out the potential threats to personal privacy posed by recent advances in technology, and specifically, by allowing law enforcement unfettered access to such technology. In the

cases before this court, however, there is no evidence that the officers either improperly gained access to the appellants' license records or made improper use of the information after accessing it (and indeed, evidence of such misuse would present us with a different case entirely). Again, the officers' searches of the DOL database were not invasive and the information accessed was not highly personal. Furthermore, there is no evidence here that the officers specifically targeted the appellants for investigation based on their race, gender, physical characteristics, or for any other improper purpose.

While it is well established that article I, section 7 of the Washington Constitution provides greater protection of personal privacy rights than does the Fourth Amendment, these are not cases in which that enhanced protection is implicated. Drivers in this state do not have a reasonable expectation of privacy in their DOL records such that the police are precluded from engaging in the conduct complained of in these cases. Thus, we affirm the decisions entered below.

WEBSTER and COX, JJ., concur.

Reconsideration denied July 26, 2001.

Review granted at 145 Wn.2d 1014, 1016 (2002).